928 So.2d 39 (2005)
Lois Gisclair, Wife of/and Dan GISCLAIR
v.
Monte M. BONNEVAL, M.D.
No. 2004 CA 2474.
Court of Appeal of Louisiana, First Circuit.
December 22, 2005.
*40 Lawrence D. Wiedemann, Wiedemann & Wiedemann, New Orleans, for Plaintiffs-Appellants Lois and Dan Gisclair.
Carl T. Conrad, Joseph A. Reilly, Jr., Henderson, Reilly & Boudreaux, Houma, for Defendant-Appellee Monte M. Bonneval, M.D.
Before: PARRO, McDONALD, and HUGHES, JJ.
PARRO, J.
In this medical malpractice case, Dan and Lois Gisclair appeal a judgment granting a motion for summary judgment in favor of Dr. Monte M. Bonneval and dismissing their claims against him. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
In January 1998, Dr. Bonneval performed a laparoscopic cholecystectomy on Dan Gisclair to remove gallstones. About eleven days later, due to injury to his common bile duct that occurred during the procedure, Gisclair suffered leakage of bile into his abdominal cavity. Gisclair claims Dr. Bonneval negligently severed the common bile duct during the laparoscopic surgery. Gisclair claims he continues to suffer from the effects of the bile duct leakage and the later repair procedures.
A medical review panel unanimously found there was no breach of the standard of care, and the Gisclairs filed suit against Dr. Bonneval. During discovery, Dr. Bonneval's attorney learned that the Gisclairs planned to use a statement allegedly made by Dr. Bonneval in another legal proceeding that injury to the common bile duct during gallbladder surgery is always malpractice. The Gisclairs did not timely respond to a request for production, so Dr. Bonneval moved to compel discovery of this evidence. Before the hearing on the motion, the Gisclairs and Dr. Bonneval entered into a consent judgment barring introduction of or any reference to
all depositions, trial testimony, reports, statements or other written evidence by Dr. Monte Bonneval wherein he addresses the standard of care involving injury or trauma to the common bile duct during surgery
if the Gisclairs did not produce such statements by a certain date. That date passed without such production.
Dr. Bonneval then filed a motion for summary judgment, alleging the Gisclairs would not be able to sustain their burden of proof at trial due to the "total absence of any expert medical testimony" supporting their claims. Dr. Bonneval's motion was supported by his own affidavit, two depositions of Dr. John S. Bolton, certified true copies of the medical review panel opinion, the consent forms Gisclair had signed for the laparoscopic procedure, and the Gisclairs' discovery responses stating they had made "no determination" with regard to expert testimony to support their claims.
*41 The hearing on the motion was continued once at the Gisclairs' request and was reset for July 7, 2004. On July 6, 2004, the Gisclairs faxed to opposing counsel a memorandum opposing the motion, with attachments consisting of a copy of a judgment in an unrelated district court case, an affidavit from the plaintiff in that case, and a letter from a physician involved in the plaintiff's treatment in that case. Also attached was a motion to continue the hearing or, in the alternative, to submit the matter on briefs. The motion to continue was denied, and the hearing was held as scheduled. Because the Gisclairs' opposition evidence was untimely, it was not considered.[1] The court rendered judgment in favor of Dr. Bonneval, granting the motion for summary judgment and dismissing the Gisclairs' claims. The court referred to the opinion of the medical review panel, which stated Dr. Bonneval had not deviated from the standard of care, and concluded:
The motion for summary judgment has the attachments required, and the burden of proof in the motion for summary judgment is on the moving party. However, once the moving party has made a prima facie showing that the motion should be granted, the burden shifts in this case to the plaintiff. The failure of the plaintiff to produce evidence of the material factual dispute requires a granting of the motion for summary judgment. There has been no showing by the plaintiff which is considered by the Court. There is no genuine issue of material fact. There is no medical expert evidence in support of plaintiff's claims.
On appeal of this judgment, the Gisclairs assert the court erred in failing to consider the doctrine of res ipsa loquitur in opposition to the motion.

APPLICABLE LAW

Summary Judgment
An appellate court reviews a district court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. West v. Clarendon Nat'l Ins. Co., 99-1687 (La.App. 1st Cir.7/31/00), 767 So.2d 877, 879. The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B); Johnson v. Evan Hall Sugar Co-op., Inc., 01-2956 (La.App. 1st Cir.12/30/02), 836 So.2d 484, 486.
On a motion for summary judgment, if the moving party will not bear the burden of proof at trial on the matter before the court on the motion, the moving party must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment must be granted. LSA-C.C.P. art. 966(C)(2); *42 McGee v. State ex rel. DOTD, 00-2706 (La.App. 1st Cir.3/28/02), 813 So.2d 625, 628. If qualifying evidence is submitted in opposition to a motion for summary judgment that creates a dispute as to a genuine issue of material fact, a motion for summary judgment should be denied. Simmons v. Berry, 98-0660 (La.App. 1st Cir.12/22/00), 779 So.2d 910, 917.
When a motion for summary judgment has been properly made and supported, the adverse party may serve opposing affidavits with a memorandum supporting the opposition. Those documents shall be served at least eight days prior to the date of the hearing unless the rules for Louisiana district courts provide to the contrary. See LSA-C.C.P. art. 966(B). Rule 9.9(b) of the Louisiana Rules for District Courts states that a party who opposes an exception or motion must concurrently furnish the trial judge and serve on all other parties an opposition memorandum at least eight calendar days before the scheduled hearing; the opposition memorandum must be received by the other parties at least eight calendar days before the hearing, unless the court sets a shorter time. This rule is applicable to motions for summary judgment. See LSA-Dist. Ct. R. 9.10(1). The time limitation established by Article 966 is mandatory, so affidavits not timely filed are inadmissible and properly excluded. American Bank & Trust Co. v. International Dev. Corp., 506 So.2d 1234, 1235-36 (La.App. 1st Cir.1987).

Medical Malpractice Burden of Proof/Res Ipsa Loquitur
To prevail in a medical malpractice case, the plaintiff must establish the standard of care applicable to the charged physician, a violation by the physician of that standard of care, and a causal connection between the physician's alleged negligence and the plaintiff's injuries. LSA-R.S. 9:2794(A). Generally, a plaintiff must introduce an expert witness to testify with regard to a violation of the standard of care, unless the defendant physician or a defense expert testifies regarding the standard of care and the objective evidence at trial is such that a lay jury can infer negligence from the facts. Pfiffner v. Correa, 94-0924, 94-0963, and 94-0992 (La.10/17/94), 643 So.2d 1228, 1230; Simmons v. Berry, 779 So.2d at 915.
Res ipsa loquitur[2] is not a substantive legal tenet, but rather an evidentiary doctrine under which a tort claim may be proved by circumstantial evidence. Morgan v. Willis-Knighton Med. Ctr., 456 So.2d 650, 655 (La.App. 2nd Cir.1984). It applies when the accident would not normally occur in the absence of negligence, there is an absence of direct evidence to explain the activities leading to the injury, and the accident or injury was caused by an agency or instrumentality within the actual or constructive control of the defendant. Walston v. Lakeview Reg'l Med. Ctr., 99-1920 (La.App. 1st Cir.9/22/00), 768 So.2d 238, 242, writ denied, 00-2936 (La.12/15/00), 777 So.2d 1229. In order to use the doctrine of res ipsa loquitur, the plaintiff must establish a foundation of facts on which the doctrine may be applied. Bradbury v. Thomas, 98-1678 (La. App. 1st Cir.9/24/99), 757 So.2d 666, 671. The doctrine of res ipsa loquitur is applied after all of the evidence has been presented. Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr., 564 So.2d 654, 666 (La. 1989).
In Pfiffner v. Correa, 643 So.2d at 1233, the Louisiana Supreme Court recognized *43 that expert testimony is not always necessary to meet the plaintiff's burden of proving a breach of the applicable standard of care in a medical malpractice case, stating:
[T]here are situations in which expert testimony is not necessary. Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body, from which a lay person can infer negligence.
However, the court reversed the jury award, concluding there was no evidence to support the jury's finding that the purported breach of the standard of care was the cause of the patient's death or his loss of a chance of survival. Pfiffner v. Correa, 643 So.2d at 1236.[3]
Despite the reference in Pfiffner to "leaving a sponge in a patient's body, from which a lay person can infer negligence," this court encountered that exact situation and an argument urging the doctrine of res ipsa loquitur in connection with a motion for summary judgment in the Walston case. In that case, a heart catheterization of Ms. Walston revealed that immediate surgery was necessary to repair an aortic aneurysm. After a second emergency surgical procedures, a subsequent x-ray revealed that a sponge had been left in her chest cavity, requiring a third surgery to remove it. Supporting evidence for the motion for summary judgment included the medical review panel opinion, which found a breach of the standard of care, but did not find that the breach contributed to the patient's morbidity or mortality. Walston, 768 So.2d at 240. This court concluded that because the plaintiffs did not submit expert testimony concerning causation, they failed to establish the existence of a genuine issue of material fact on this essential element of their claim, and summary judgment was appropriate.
The Louisiana Supreme Court reviewed a case involving injury to unrelated organs during a laparoscopic cholocystectomy, and held that the jury was manifestly erroneous in concluding that the doctor, who had punctured three organsincluding the patient's aortain an attempt to perform the procedure and then punctured two more in an attempt to correct his error, was not negligent. Fusilier v. Dauterive, 00-0151 (La.7/14/00), 764 So.2d 74, 81. Although the doctrine of res ipsa loquitur was mentioned, there was also expert opinion evidence at trial that the surgeon had breached the standard of care, and the court did not specifically apply the doctrine in reaching its conclusion.
In Simmons v. Berry, 779 So.2d 910, a portion of the patient's ureter was removed during surgery to remove her left fallopian tube and uterus and excise a cyst from the right fallopian tube. This court reviewed evidence submitted in opposition to the physician's motion for summary judgment, including statements from several experts who stated that the applicable standard of care required the physician to visualize the ureter before, during, and at the completion of the procedure. The physician's operative report was attached to the deposition of one of the experts; it stated Dr. Berry had visualized the ureter at the beginning of the surgery, but left unanswered the factual issue of whether he had visualized the ureter during and at the completion of the surgery. Therefore, this court concluded the motion for summary judgment should have been denied. *44 The doctrine of res ipsa loquitur was not mentioned.

ANALYSIS
We review the evidence in this case de novo, keeping in mind the tenets established by statutory law and the jurisprudence. At the outset, we note that the trial court did not err in excluding the evidence submitted by the Gisclairs in opposition to the motion for summary judgment. That evidence was faxed to opposing counsel the day before the hearing on the motion, despite the requirement in the Code of Civil Procedure and the Louisiana Rules for District Courts that the opposition memorandum and attachments must be served on opposing parties eight days before the scheduled hearing. It was an untimely submission, and the court was legally correct in refusing to consider this evidence.[4]
The Gisclairs contend that the fact that unexplained injury occurred to an organ of the body that was not involved in the surgical procedure is sufficient to create a genuine issue of material fact, such that summary judgment was inappropriate. They urge the application of the doctrine of res ipsa loquitur, claiming the injury to the common bile duct would not normally occur in the absence of negligence. However, Dr. Bolton's depositions establish that injury to the common bile duct is a known risk of laparoscopic cholocystectomy and can occur even if there is no breach of the standard of care. Dr. Bolton performed a surgical procedure to repair Gisclair's common bile duct after another doctor's efforts to take care of the problem with the insertion of stents did not fully correct the bile leakage. Dr. Bolton emphatically disagreed several times with the statement that cutting of the common bile duct during the surgery was negligence, stating:
Oh, I think you're making kind of a fallacious argument that because something's infrequent, then it indicates sort ofthe term to use, res ipsa loquitur, that a mistake was made, and that's not correct.
* * *
I don't believe that the fact that a bile duct injury occurs necessarily implies that malpractice was performed.
* * *
But there should be no mistake made about it: There is an inherent risk, and through the history of surgery, there has never been a period of time where no bile duct injuries occurred, and there will never be, so that the fact that an occasional patient has an injury, by itself, does not imply that malpractice has been performed.
Dr. Bolton said the common bile duct could be injured during gallbladder surgery in three other ways, which he described as a cauterization leak, a traction tear, or a sidewall clipping. The cauterization leak can occur if the cautery tool makes contact with a surgical clip that is properly inserted on the cystic duct, but is also in contact with the common bile duct, thereby transmitting heat to the common bile duct and burning it. The burn injury can necrose over a week or two and perforate, leading to a bile leak. A traction injury could occur if, during the procedure, *45 excessive traction is exerted on the tissue alongside the common bile duct, creating a bruise or small partial-thickness tear that later perforates. A sidewall clipping could occur if the common bile duct "tents" due to traction, such that the surgical clip being applied to the cystic duct catches the sidewall of the common bile duct too. Finally, Dr. Bolton emphasized that he had reviewed the videotape of the laparoscopic procedure performed by Dr. Bonneval on Gisclair, and concluded that he did not see any deviation from the standard of care.
The Gisclairs suggest that Dr. Bolton's testimony was inconsistent, because in the first deposition, he said that the videotape showed the common bile duct being severed. This is correct, in that he did make that observation. But Dr. Bolton had not viewed the entire videotape and had not reviewed Gisclair's records before giving that deposition. Later in that deposition, after he reviewed the other doctor's notes from the stent procedures and his own notes from the surgery he had performed, Dr. Bolton corrected his earlier observation, stating that the stent was present in the common bile duct and that it could not have been inserted if the common bile duct had been severed.
The Gisclairs also suggest that Dr. Bolton agreed that if Dr. Bonneval could not visualize the common bile duct, it was negligence to continue the laparoscopic procedure without first performing a cholangiogram enterographythe insertion of iodine-containing dye. However, Dr. Bolton said such a test could be used if the surgeon could not see the common bile duct and was unsure of the anatomy. But he also said that in 50% of the laparoscopic procedures, the common bile duct is not visualized; yet, such a test is not performed, because the surgeon is comfortable enough with the anatomy to proceed.
After reviewing all the evidence submitted in connection with the motion, we conclude that the trial court was correct in not applying the doctrine of res ipsa loquitur in this case. The doctrine is not a substitute for factual evidence; it is applied after the factual evidence has been submitted, and then only if there is sufficient circumstantial evidence to suggest that the only reasonable cause of the plaintiff's injury is the defendant's breach of the standard of care. Dr. Bolton's depositions, the medical review panel opinion, and Dr. Bonneval's affidavit established that the standard of care was not breached. The Gisclairs submitted no evidence that Dr. Bonneval breached the standard of care in performing the laparoscopic surgery, and the facts adduced do not permit the conclusion that the injury alone creates a presumption of negligence. Therefore, the court was correct in granting the motion for summary judgment.

CONCLUSION
The judgment is affirmed. All costs of this appeal are assessed against the Gisclairs.
AFFIRMED.
HUGHES, J., concurs.
NOTES
[1] In addition to objecting to the untimeliness of the Gisclairs' submission, Dr. Bonneval contended it improperly referred to evidence precluded by the consent judgment on the motion to compel.
[2] This is a Latin term meaning "the thing speaks for itself." Black's Law Dictionary 1311 (7th Ed.1999).
[3] Although the Pfiffner case is often cited as supporting the doctrine of res ipsa loquitur, there is no mention of this doctrine in the opinion.
[4] Although the Gisclairs did not assign the exclusion of their evidence as error, their brief on appeal refers to the excluded evidence as if it should be considered by this court in reaching its decision. The evidence was properly excluded by the trial court; therefore, it does not form a part of the record upon which this court's de novo review is based.