950 So.2d 839 (2006)
Julie BOUDREAUX, Individually and on Behalf of Her Minor Children, Byron P. Gautreaux and Kayla Marie Gautreaux, et al.
v.
MID-CONTINENT CASUALTY, et al.
No. 2005 CA 2453.
Court of Appeal of Louisiana, First Circuit.
November 3, 2006.
Writ Denied January 26, 2007.
*840 William D. Grimley, Baton Rouge, for Plaintiffs-Appellants Julie Boudreaux, et al.
Morgan J. Wells, Jr., Christopher R. Pennison, Larzelere, Plcou, Wells, Simpson, & Lonero, L.L.C., Metairie, for *841 Defendants-Appellees Mid-Continent Casualty Co. and Carol G. Harris.
Carl T. Conrad, Joseph A. Reilly, Jr., Henderson, Reilly & Boudreaux, Houma, for Defendant-Appellee Stefan G. Pribil, M.D.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
In this unusual appeal arising out of an automobile accident, the issue is whether the defendants can introduce evidence that certain surgical procedures performed on the injured plaintiff were not reasonable and necessary, despite the fact that all medical malpractice claims against the neurosurgeon who performed those procedures were dismissed on a motion for summary judgment. For the following reasons, we affirm the summary judgment in favor of the neurosurgeon and also affirm the denial of the injured plaintiff's motion in limine, which sought to exclude evidence that those surgical procedures were not reasonable and necessary.

FACTUAL AND PROCEDURAL BACKGROUND
Julie Boudreaux was involved in an automobile accident in November 1998, when the car in which she was a passenger was rear-ended at a stoplight by Carol G. Harris. Boudreaux sued Harris and her automobile liability insurer, Mid-Continent Casualty Company (Mid-Continent), claiming damages for her personal injuries.[1] In the course of her medical treatment following the accident, Boudreaux's family doctor referred her to Dr. Stefan G. Pribil, a neurosurgeon who began treating her in March 1999 for back and neck pain. Her symptoms were not alleviated during a year of conservative treatment, so in June 2000, Pribil performed a cervical anterior discectomy and fusion at C5-6 and C6-7. When this did not completely relieve her complaints of pain, he performed a second surgery in September 2000.
During discovery, Harris and Mid-Continent learned that another neurosurgeon, Dr. H. Carson McKowen, had previously treated Boudreaux for back problems unrelated to this accident. McKowen opined in a deposition that, based on the x-rays he had reviewed, Pribil's surgery was unnecessary. Harris and Mid-Continent then filed an amended answer, affirmatively alleging that Pribil had performed unnecessary surgery that caused, exacerbated, and/or contributed to Boudreaux's damages, for which they were "in no way" responsible.[2] Boudreaux believed Pribil's treatment of her, including the surgeries, was justified. However, in light of the affirmative defense, Boudreaux had no choice but to request a medical review panel to examine whether the surgery Pribil had performed on her was medically warranted. The panel found no malpractice, but the defendants' allegation of third party fault regarding Boudreaux's damages was still extant. Therefore, Boudreaux amended her petition to add Pribil as a defendant, alleging that if McKowen's initial opinion were eventually proved correct, then Pribil had committed medical malpractice, and she had suffered additional *842 injuries due to the unnecessary surgeries.[3]
Eventually, Pribil moved for summary judgment, supported by the medical review panel opinion and claiming Boudreaux could not provide expert medical evidence sufficient to establish that his treatment of her fell below the standard of care. Boudreaux opposed the motion and, in the alternative, moved for summary judgment and/or to strike the defendants' affirmative defense based on Pribil's malpractice. Boudreaux obtained an affidavit from McKowen in which he reiterated his opinion that the surgery performed by Pribil was unnecessary, but also stated that another physician evaluating her condition could reach a different conclusion and that he did not think Pribil's actions breached the standard of care. Based on this and the panel opinion, the court found Boudreaux had not provided any evidence that Pribil had breached the standard of care, granted Pribil's motion for summary judgment, and in a judgment signed November 19, 2004, dismissed Boudreaux's claims against Pribil.
In another judgment, signed December 6, 2004, the court also granted her motion to strike the affirmative defense of medical malpractice alleged by the defendants against Pribil. However, in discussing this issue in oral reasons, the court also stated that the defendants could present evidence at trial that the surgery was not reasonable or necessary. The explanation given was as follows:
The only way Dr. Pribil could be added to the line for the liability section of the [jury] interrogatory is if there was a breach in the standard of care that caused her further injury. It does not prevent Mid-Continent from arguing that the surgery was unnecessary. But even if they argue that the surgery was unnecessary, that doesn't add Dr. Pribil to the line of negligence.
* * *
Now the argument that counsel and Mid-Continent can make at jury trial that the surgery was unnecessary remains. I don't think they will be prevented any more than they would if this was a chiropractic case and a lawyer comes to court and says, well, the person didn't really need to go but just kept going. Or if this was some other type of treatment issue. It's not a fault issue. They may just claim that it was unnecessary. And the jury can consider that. But it's not going [to add] another chair at the table or a line on the apportionment of fault.
Boudreaux filed a motion in limine,[4] asking the court to exclude all testimony *843 questioning the reasonableness and necessity of the surgery or, in the alternative, to reconsider its ruling on Pribil's motion for summary judgment and reinstate the claims against him. In their response to this motion, Mid-Continent and Harris supported her request to reconsider the granting of Pribil's motion for summary judgment, but opposed her motion in limine to exclude evidence that the surgery was unnecessary. Pribil, of course, opposed both requests. On March 14, 2005, the court denied the motion for reconsideration and maintained the summary judgment previously rendered in favor of Pribil. On March 31, 2005, the court denied the motion in limine and designated its judgment as final in accordance with LSA-C.C.P. art. 1915(B)(1).
Boudreaux appeals both judgments  the summary judgment in favor of Pribil and the interlocutory judgment on the motion in limine. She argues that the trial court was inconsistent in its decisions to grant summary judgment in favor of Pribil on the issue of medical malpractice, but still allow evidence at trial that the surgeries he performed were unnecessary. She contends that a physician's surgical decision cannot be within the standard of care, while at the same time be unreasonable and unnecessary. She also assigns as error the court's decision to grant summary judgment, claiming that unresolved genuine issues of material fact remain.

SUMMARY JUDGMENT
Applicable Law
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Co-op., Inc., 01-2956 (La.App. 1st Cir.12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
On a motion for summary judgment, if the moving party will not bear the burden of proof at trial on the matter that is before the court on the motion, the moving party must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. If the adverse party then fails to produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. See LSA-C.C.P. art. 966(C)(2); Gisclair v. Bonneval, 04-2474 (La.App. 1st Cir.12/22/05), 928 So.2d 39, 41.
Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate  whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ernest v. Petroleum Serv. Corp., 02-2482 (La.App. 1st Cir.11/19/03), 868 So.2d 96, 97, writ denied, 03-3439 (La.2/20/04), 866 So.2d 830. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345 (La.App. 1st Cir.12/29/97), 706 So.2d 525, 528.
A plaintiff in a medical malpractice action is required to establish: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by *844 physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the involved medical specialty; (2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; and (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred. See LSA-R.S. 9:2794(A). Summarizing, the plaintiff must establish the standard of care applicable to the doctor, a violation by the doctor of that standard of care, and a causal connection between the doctor's alleged negligence and the plaintiff's injuries. Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228, 1233.
To meet this burden of proof, the plaintiff generally is required to produce expert medical testimony. Lefort v. Venable, 95-2345 (La.App. 1st Cir.6/28/96), 676 So.2d 218, 220. Although the jurisprudence has recognized exceptions in instances of obvious negligence, those exceptions are limited to instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can. Pfiffner, 643 So.2d at 1234. The jurisprudence has thus recognized that an expert witness is generally necessary as a matter of law to prove a medical malpractice claim. Fagan v. LeBlanc, 04-2743 (La.App. 1st Cir.2/10/06), 928 So.2d 571, 575. Moreover, the jurisprudence has held that this requirement of producing expert medical testimony is especially apt when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence that the treatment met the applicable standard of care. Id.; Lee v. Wall, 31,468 (La.App. 2nd Cir.1/20/99), 726 So.2d 1044, 1046-47.
Discussion
Boudreaux would have had the burden of proof at trial for her claim of medical malpractice against Pribil. Pribil, as the party bringing the motion for summary judgment, was required only to point out an absence of support for one or more elements essential to her claim against him. He did so by supporting his motion with deposition testimony from all of the doctors on the medical review panel, in which they reiterated and explained their unanimous conclusion that his treatment of Boudreaux, including the surgical procedures, met the applicable standard of care. Pribil also submitted his own affidavit, in which he fully described his qualifications, the complete course of Boudreaux's treatment, the reasons for the surgical procedures he had performed, and the results of those procedures. With this evidence, Pribil satisfied his burden of pointing out an absence of support for an essential element of Boudreaux's claim, namely, that his treatment of her violated the applicable standard of care.
Boudreaux was at this point required to produce factual evidence sufficient to establish that she would be able to satisfy her evidentiary burden of proof on this issue at trial. Since the nature of her claim was not such that a lay jury could perceive negligence in Pribil's conduct as well as any expert could, she had to provide expert medical opinion to support her claim that Pribil had breached the applicable standard of care. To meet this burden, *845 she relied on the opinion expressed by McKowen, who stated in his affidavit that after a thorough review of Boudreaux's medical records, he continued to believe that the surgery performed by Pribil was unnecessary. However, he also qualified that statement by noting, "Trying to translate my lone opinion into the standard of care is not a valid proposition." McKowen further acknowledged that "Probably a third of neurosurgeons would have offered this patient surgery after failure of prolonged conservative care."
Boudreaux argues that McKowen's continued belief that the surgery was not necessary creates a genuine issue of material fact. She contends that treatment which is unnecessary can never fall within the standard of care and is malpractice. We disagree with this logic, as did the trial court and her own medical expert. The fact that surgery is ultimately determined not to have been necessary does not convert a well-considered decision to do that surgery, and the competent performance of it, into malpractice. As noted by McKowen in his affidavit, his conclusion that the surgery was not needed does not equate to a breach of the standard of care by Pribil.
Given that her own medical expert stated clearly, "I do not believe Dr. Pribil breached the standard of [care] by doing the surgery, nor did I ever mean to imply such a position," we agree with the trial court that Boudreaux failed to produce evidence that she would be able to establish such a breach at trial. Therefore, there was no genuine issue of material fact, and summary judgment was appropriate, as a matter of law.[5]

MOTION IN LIMINE TO EXCLUDE EVIDENCE
Generally, all relevant evidence is admissible. LSA-C.E. art. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. LSA-C.E. art. 401. Whether evidence is relevant is within the discretion of the trial judge, and his ruling will not be disturbed on appeal in the absence of a clear abuse of his discretion. Hunter v. State ex rel. LSU Med. Sch., 05-0311 (La.App. 1st Cir.3/29/06), 934 So.2d 760, 763.
The basis of Boudreaux's motion in limine was that since the claims of medical malpractice against Pribil had been dismissed, any opinion evidence as to whether the surgery he performed was unnecessary and unwarranted was no longer relevant, and therefore, should not be allowed. We disagree. Like her argument concerning the motion for summary judgment, this contention is based on the false premise that if the surgery was not necessary, then it must have been malpractice to perform it. As discussed above, it is not necessarily a breach of the standard of care if a physician treats a patient for an extensive period of time, conducts diagnostic tests, and decides that a certain surgical procedure is warranted, but later the determination is made that such surgery was not actually necessary. Therefore, the fact that the medical malpractice allegations are no longer a part of the lawsuit does not render irrelevant all evidence concerning the justification for the surgical procedures that were performed on Boudreaux. As implied by the trial court in its observation that in certain *846 cases, an argument might be made that "the person didn't really need to go but just kept going," such evidence may be relevant to a determination of which items of damages the jury may choose to award, depending on whether it believes Boudreaux's injuries from the accident were so severe that the surgery was necessary. This evidence may also be relevant for consideration of whether all of Boudreaux's complaints were caused by this particular accident, or whether there was a psychosomatic component to her symptoms.
We conclude that there are facts, other than whether Pribil's treatment of Boudreaux constituted medical malpractice, which may tend to be proved or disproved by evidence concerning the justification for the surgeries. Therefore, the evidence is relevant, and we find no abuse of discretion in the court's decision to allow it to be presented.

CONCLUSION
Based on the foregoing, the judgment of March 14, 2005, maintaining the November 19, 2004 summary judgment that dismissed all claims against Pribil, is affirmed. The judgment of March 31, 2005, denying the motion in limine, is also affirmed. All costs of this appeal are assessed to Boudreaux.
AFFIRMED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurring.
I respectfully concur in the denial of the plaintiff's motion in limine. However, I believe that the trial court must be very cautious and frame the issue of the recovery of medical costs only in terms of causation, and not malpractice. Although unnecessary surgery will, more often than not, equate to malpractice, the question of whether Dr. Pribil committed malpractice by performing "unnecessary" surgery has been resolved. The issue of causation remains. Without the requisite showing of causation, a plaintiff cannot recover medical costs from the tortfeasor or her insurer.
NOTES
[1] Boudreaux filed suit on her own behalf and on behalf of her minor children, Byron P. Gautreaux and Kayla Marie Gautreaux. Other plaintiffs, whose claims are not involved in this appeal, included the driver of the vehicle, Karla Boudreaux Harrison, and another passenger, Stella V. Boudreaux.
[2] By this time, a motion for summary judgment on the issue of liability had been decided in Boudreaux's favor, finding Harris was solely at fault in causing the accident and leaving only damages to be litigated.
[3] These actions had to be taken, because the Louisiana Supreme Court had indicated in a recent case that with the advent of pure comparative fault, an original tortfeasor could no longer be held responsible for additional damages caused by subsequent medical malpractice in treating an injured plaintiff. Rather, the defendant could present evidence of a health care provider's fault as part of its defense, and if the fact finder concluded that the plaintiff's damages were caused by more than one person, then each joint tortfeasor would be liable only for its degree of fault and could not be held solidarily liable with another tortfeasor for damages attributable to that other tortfeasor's fault. See Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism, 02-0563 (La.10/15/02), 828 So.2d 530, 539.
[4] She filed a pleading entitled, "Motion in Limine to Prevent Testimony on Whether the Surgery Performed was Reasonable and Necessary and in the Alternative, Motion to Reconsider." We note that the Louisiana Code of Civil Procedure has no provisions for a "Motion to Reconsider." The proper designation when seeking reconsideration of a judgment is a "Motion for New Trial." See LSA-C.C.P. arts.1971-1979.
[5] Of course, once the plaintiffs' claims of medical malpractice had been dismissed on summary judgment, the court was correct in also striking the affirmative defense of medical malpractice.