PARRO, J.
12Judith and Harris Henry appeal a judgment granting summary judgment in favor of defendants, NOHSC Houma # 1, L.L.C. (NOHSC)[1] and Colony Insurance Company (Colony), and dismissing their claim for damages suffered by Ms. Henry when she was injured in a fall at NOHSC’s restaurant. For the following reasons, we affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
On March 13, 2008, Ms. Henry was a patron at NOHSC’s restaurant in Houma, Louisiana, where she and her husband had dined on at least six occasions during the month since it opened. Ms. Henry was 74 years old and had used either a cane or a walker for support since having two hip replacements some years earlier and to counteract the effects of diabetic neuropa-thy in her feet. On that day, she was having lunch with a group of friends who had participated that morning in a YMCA aquatic therapy class for arthritis, which was led by Ms. Henry. When the group arrived at the restaurant, they found their table and then went to the counter to place their orders and get soft drinks. After Ms. Henry placed her order and got her soft drink at the counter, she began to walk back across the carpeted floor to the table. She was using a cane and one of her friends was walking ahead of her, carrying her soft drink. The route back to the table was the same general route through the restaurant as they had used when approaching the counter. Ms. Henry had walked about fifteen or twenty feet *472 toward the table when she fell. She said in a deposition that she was stepping with her right foot when her toe got caught in the carpet; her foot went backwards, and she fell, landing on the foot and breaking her right ankle. She said she always looked down when she used the cane, so she could see where to place it as she walked. Ms. Henry said she did not notice anything about the carpet to indicate a danger, nor was there any food or other substance on the floor where she fell. However, although the Rcarpet was not frayed or worn, she stated it was uneven, because it had “little squares” that formed its weave. As a result of this fall, Ms. Henry had to undergo four surgeries to stabilize her right ankle and foot, and was essentially wheelchair bound.
On February 17, 2009, Mr. and Mrs. Henry filed suit for the damages they had incurred as a result of her fall, naming NOHSC and its insurer, Colony, as defendants.[2] On April 1, 2010, NOHSC and Colony filed a motion for summary judgment, supported by excerpts from Ms. Henry’s deposition; an affidavit from Paul McGoey, NOHSC’s managing partner; and an affidavit from Donald Maginnis, a registered architect, with attachments consisting of photographs of the restaurant’s interior, a hand-drawn diagram of the restaurant’s interior, and excerpts from the 2006 Life Safety Code Handbook. The motion was set for hearing on May 7, 2010, but was continued at the Henrys’ request until June 18, 2010. On June 16, 2010, the Henrys filed an opposition memorandum, supported by excerpts from Paul McGoey’s deposition; excerpts from the deposition of Kevin McKnight, NOHSC’s general manager; an affidavit from Trepp Lombard, the owner and operator of TREPCO, a construction company; an affidavit from Tracy Peltier, a physical therapist; and a copy of the NOHSC employee handbook.
At the hearing on the motion, the court noted that the Henrys’ opposition and supporting affidavits had not been filed timely. Counsel for the defendants moved to strike the affidavits as untimely, pursuant to LSA-C.C.P. art. 966(B) and District Court Rule 9.9(b).[3] The court granted the motion to strike and did not consider the affidavits when ruling on the motion, but did allow the Henrys’ lawyer to present oral argument. |4After hearing arguments and considering the evidence presented by the parties, the court ruled in favor of the defendants, granting the motion for summary judgment and dismissing the Hen-rys’ claims, with prejudice. The judgment was signed on June 30, 2010.
The Henrys filed a motion for new trial, which was denied by the court after a *473 hearing. This judgment was signed on September 22, 2010. The Henrys then appealed the June 30, 2010 judgment.
APPLICABLE LAW

Motion for Summary Judgment

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Duncan v. U.S.A.A. Ins. Co., 06-363 (La.11/29/06), 950 So.2d 544, 546; see LSA-C.C.P. art. 966. Appellate courts review summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, namely, whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129, 137. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2).
A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B); Gisclair v. Bonneval, 04-2474 (La.App. 1st Cir.12/22/05), 928 So.2d 39, 41. The burden of proof on summary judgment remains with the mover. However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that |Bthere is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Pugh v. St. Tammany Parish Sch. Bd., 07-1856 (La.App. 1st Cir.8/21/08), 994 So.2d 95, 97, writ denied, 08-2316 (La.11/21/08), 996 So.2d 1113; see also LSA-C.C.P. art. 967(B).
A “genuine issue” is a “triable issue,” or one on which reasonable persons could disagree. Champagne v. Ward, 03-3211 (La.1/19/05), 893 So.2d 773, 777. A “material fact” is a fact, the existence or nonexistence of which may be essential to the plaintiffs cause of action under the applicable theory of recovery. Kennedy v. Sheriff of East Baton Rouge, 05-1418 (La.7/10/06), 935 So.2d 669, 687. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Boudreaux v. Mich-Continent Cas. Co., 05-2453 (La.App. 1st Cir.11/3/06), 950 So.2d 839, 843, writ denied, 06-2775 (La.1/26/07), 948 So.2d 171.

Liability of Owner/Custodian/Merchant

The general rule is that the owner or custodian of property has a duty to keep the property in a reasonably safe condition. The owner or custodian must discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence. Smith v. The Runnels Sch., Inc., 04-1329 (La.App. 1st Cir.3/24/05), 907 So.2d 109, 112. This duty is the same *474 under theories of negligence or strict liability. Under either theory, the plaintiff has the burden of proving that: (1) the property that caused the damage was in the “custody” of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (8) the unreasonably dangerous condition was a cause in fact of the | ^resulting injury; and (4) defendant had actual or constructive knowledge of the risk. Id.; see also LSA-C.C. arts. 2815, 2317, and 2317.1.
Concerning the burden of proof in claims against “merchants,” LSA-R.S. 9:2800.6 provides, in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition [that] caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
ANALYSIS
The Henrys contend on appeal that the court erred in granting the defendants’ motion for summary judgment, because a genuine issue of material fact exists as to whether the carpet on which Ms. Henry fell contains fibers of varying lengths, constituting a condition presenting an unreasonable risk of harm. They also assign as error the court’s finding that NOHSC did not have notice of the condition that resulted in Ms. Henry’s fall, when NOHSC chose the carpet that was installed at its restaurant, and therefore, is presumed to know of its condition.
In support of the motion for summary judgment, NOHSC and Colony included an affidavit from Paul McGoey, which stated that, as the managing partner of NOHSC, he had personal knowledge of information and documents regarding the restaurant. He said that NOHSC decided to use carpets on the floors in the dining area, because uncarpeted floors tend to become slippery when food and other substances fall on |7them. NOHSC hired Wright to provide and install the carpet, which was a commercial grade carpet and was installed on February 8, 2008. Since the restaurant’s opening on February 14, 2008, the carpet had not been altered in any way. In the month before Ms. Henry’s fall, NOHSC did not receive any complaints from patrons, employees, or anyone else about the restaurant’s floor or carpet, nor did any accidents occur which were attributed in any way to either the floor or carpet. NOHSC did not observe any problems or defects in either the floor or carpet.
In Ms. Henry’s deposition, excerpts of which were also attached in support of the defendants’ motion, she said that she and *475 Mr. Henry went often to the restaurant, especially on weekends. She estimated they had been there six times since it opened. They always ate inside, and she had no difficulty walking across the floor of the restaurant. She had never tripped, slipped, or fallen on the carpeted floor, nor had she seen anyone else slip and fall in the restaurant. On the day she fell, she and her group found their reserved table and then went to the counter to order. As she walked toward the counter, she had no trouble walking on the carpet and did not notice anything on the floor that looked like it presented a hazard or a danger. On the way back to her table, her toe got caught, but she did not know how that occurred. She stated, “All I know is the toe was caught and I couldn’t move and I lost my balance and fell on my foot.” Her foot was bent backwards underneath her when she landed on it. Right before her fall, she was looking down and ahead, in order to see where she could put her cane. She saw nothing about the carpet that indicated there was a danger that her toe might get caught. The area where she fell was in the same general pathway that she had traversed to get to the counter. She said it appeared to her that the carpet on the floor was an “indoor/outdoor” carpet, and it had little squares on it. The surface was not a “smooth, smooth top,” but she saw no unevenness in the carpet or floor where she fell. The carpet was not slippery, was not torn up or worn in any way, and was not a shag-type carpet. She saw no food or foreign objects on the floor that might have caused her to fall. At that time, Ms. Henry had been using a cane for about | sfive or six years. She carried her cane in her left hand, because she had always been told that “you carry the cane in the opposite of the side that’s ailing.” Ms. Henry said the only thing she knew that might have caused her fall was that the carpet “wasn’t an even surface. It looked like it had little squares in it.” She said the squares were in the weave of the carpet, and she could not feel the weave of the carpet under her feet as she walked.
Donald Maginnis, a licensed architect who was NOHSC’s liability expert, inspected the restaurant premises and provided an affidavit concerning the condition of the floor and carpet. His inspection of the premises and review of applicable building and safety codes did not reveal any defects or codal violations. He said the carpeted area of the restaurant was level throughout. He described the carpet as a “standard commercial grade, wall to wall carpet commonly used in restaurants, which was properly affixed to the floor with an adhesive.” It featured “squares” in its design. However, the squares merely represented changes in the color pattern of the carpet, as opposed to changes in the height or weave of the carpet. Maginnis said the carpet was not defective or dangerous and was an approved walking surface. He attached sketches of the restaurant layout, photographs, and copies of relevant provisions of the Life Safety Code. The photographs show that each square has a pattern of lines going across it in one direction. The squares are laid out in such a way that the direction of the lines alternates from square to square. In other words, looking at the floor, one square has the lines running north and south, and the squares on either side of it have the lines running east and west. This pattern is alternated with each row of squares, to give the overall effect of a muted checkerboard.
The Henrys have the burden of proof at trial that NOHSC had custody of the property that caused the damage, that the property had a condition that created an unreasonable risk of harm to persons on the premises, that the unreasonably dangerous condition was a cause in fact of Ms.
*476 Henry’s resulting injury, and that NOHSC had actual or constructive knowledge of the risk. On the motion for summary | ^judgment, NOHSC had to point out that there was an absence of factual support for one or more elements essential to the Hen-rys’ claim. The evidence submitted in support of the motion points out an absence of factual support for the essential element that the carpet or floor where Ms. Henry fell had a condition that created an unreasonable risk of harm to her. Whether the carpet fibers were all one length or were of uneven lengths to create a pattern, the evidence shows that this was new, commercial-grade carpet commonly used in restaurants, that it had been professionally installed just one month earlier, and that it had no frayed edges, worn spots, or loose threads that could have presented a hazard. The Henrys contend that Ms. Henry’s statement that the carpet was “uneven” and had a pattern created by the weave, as contrasted to Maginnis’s statement that the carpet pile had no changes in height or weave, creates a genuine issue of material fact. While these conflicting statements may present a factual issue, that factual issue does not rise to the level of a genuine issue of material fact unless there is some evidence that the carpet surface created an unreasonable risk of harm. Many carpets have variations in pile height to create patterns. This, in itself, does not make a carpet defective or dangerous. Therefore, this factual issue is not material.
The Henrys’ opposition to the motion did not establish that they would be able to satisfy their evidentiary burden of proof at trial that the carpet surface presented an unreasonable risk of harm to Ms. Henry.[4] Therefore, there is no genuine issue of material fact, and the motion was properly granted.
CONCLUSION
For the above stated reasons, we affirm the judgment of the district court, granting NOHSC’s and Colony’s motion for summary judgment and dismissing the Henrys’ claims. All costs of this appeal are assessed to the Henrys.
AFFIRMED.
CARTER, J., concurs.

. The acronym in the company name represents the New Orleans Hamburger and Seafood Company.

. In a supplemental and amending petition, they also named as a defendant the company that had installed the carpet in the restaurant, Wright Floor Covering, Inc. (Wright). This company eventually filed a motion for summary judgment, which the Henrys did not oppose, and which was granted by the court.

. The party opposing a motion for summary judgment may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to LSA-C.C.P. art. 1313 within the time limits set forth in the Uniform Rules of Louisiana District Courts, Rule 9.9. LSA-C.C.P. art. 966(B). District Court Rule 9.9(b) provides, in pertinent part: "A party who opposes an exception or motion shall concurrently furnish the trial judge and serve on all other parties an opposition memorandum at least eight calendar days before the scheduled hearing.” The time limitation established by Article 966(B) for the serving of affidavits in opposition to a motion for summary judgment is mandatory. Affidavits not timely filed can be ruled inadmissible and properly excluded by the trial court. Buggage v. Volks Constructors, 06-0175 (La.5/5/06), 928 So.2d 536, 536 (per curiam); Gisclair v. Bonneval, 04-2474 (La.App. 1st Cir. 12/22/05), 928 So.2d 39, 42.

. Having so concluded, we pretermit consideration of the Henrys' other assignment of error.