DIAMOND FIELDS AND GERALD SANFORD

NO. 21-C-481

VERSUS

FIFTH CIRCUIT

OCHSNER MEDICAL CENTER - KENNER, L.L.C., ET AL

COURT OF APPEAL

STATE OF LOUISIANA

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Nancy F. Vega
Nancy F. Vega
Chief Deputy, Clerk of Court

August 20, 2021

Nancy F. Vega
Chief Deputy Clerk

IN RE DIAMOND FIELDS AND GERALD SANFORD

APPLYING FOR SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE JUNE B. DARENSBURG, DIVISION "C", NUMBER 813-278

Panel composed of Judges Stephen J. Windhorst,
Hans J. Liljeberg, and John J. Molaison, Jr.

## WRIT GRANTED

According to the Petition for Damages enclosed in their writ application, the relators, plaintiffs Diamond Fields and Gerald Sanford, claim mental injuries resulting from Ochsner Medical Center, L.L.C.'s ("Ochsner") alleged negligence in misplacing, and not recovering, the remains of their stillborn daughter, Nalini. Before answering the petition, Ochsner filed an exception of prematurity on the basis that the relators had yet to first convene a medical review panel before filing the instant lawsuit under Louisiana Medical Malpractice Act ("LMMA") found at La. R.S. 40:1231.1, *et. seq.* The trial court granted Ochsner's exception on June 17, 2021, dismissing the relators' non-intentional negligence claims without prejudice, and the relators have timely sought review of that ruling.

## Exception of prematurity

The dilatory exception of prematurity questions whether a cause of action has matured to the point where it is ripe for judicial determination. *Spradlin v. Acadia–St. Landry Medical Foundation*, 98-1977 (La. 2/29/00), 758 So.2d 116. Under the LMMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if such claim has not first been presented to a medical review panel. *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 07-0008 (La. 09/05/07), 966 So.2d 519. "No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section." La. R.S. 40:1231.8(B)(1)(a)(i). When the exception of prematurity is pled in the medical malpractice context, the burden of proving prematurity is on the exceptor, who

21-C-481

must show that it is entitled to a medical review panel because the allegations fall within the LMMA. *LaCoste, supra*, at 523-24. The LMMA and its limitations on tort liability for a qualified health care provider apply only to claims "arising from medical malpractice," while all other tort liability on the part of the qualified health care provider is governed by general tort law. *Id*. at 524. Therefore, we conduct a *de novo* review of the district court's ruling sustaining the dilatory exception of prematurity because the issue of whether a claim sounds in medical malpractice involves a question of law. *Matherne v. Jefferson Parish Hospital Dist. No. 1*, 11-1147 (La. App. 5 Cir. 5/8/12), 90 So.3d 534, 536, *writ denied*, 12-1545 (La. 10/12/12), 98 So.3d 873. Because the MMA's limitations on the liability of health care providers are in derogation of the rights of tort victims, the MMA is to be strictly construed. *Dupuy v. NMC Operating Co.*, 15-1754 (La. 3/15/16), 187 So.3d 436, 439.

## Applicable definitions

La. R.S. 40:1231.1 of the LMMA provides the following definitions relevant to the issues raised:

> (9) "Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.

> (13) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

> (15) "Patient" means a natural person, including a donor of human blood, a donor or prospective donor of an organ or tissue, or blood components and a nursing home resident who receives or should have received health care from a licensed health care provider, under contract, expressed or implied.

The relators argue that the application of these definitions warrants a finding that Ochsner's alleged acts of negligence fall outside of the scope of the LMMA because the negligence was not related to the healthcare of Ms. Fields or Nalini. The relators also contend that because Nalini was stillborn, she was never considered to be a "person" according to La. C.C. art. 26, which provides in relevant part, "If the child is born dead, it shall be considered never to have existed as a person, except for purposes of actions resulting from its wrongful death." Accordingly, relators conclude that Nalini does not meet the definition of a patient. Conversely, Ochsner argues that the LMMA applies to professional services

provided by a hospital that are an extension of health care services, including the handling of an unborn child's remains while in its custody. Ochsner also contends that the relators' claims are based on health care and professional services rendered by Ochsner to Ms. Fields.

**Law and analysis**

Other Louisiana courts have considered the issue of whether a hospital's alleged mishandling of human remains after death constitutes an act of medical malpractice as defined by the LMMA. In *Gayden v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 04-0807 (La. App. 4 Cir. 12/15/04), 891 So.2d 734, the plaintiffs alleged that the defendant hospital failed to properly refrigerate and preserve the body of their deceased family member. The hospital filed an exception of prematurity, arguing that the alleged negligence was an act of medical malpractice that first needed to be submitted to a medical review panel. The trial court granted the hospital's exception. In reversing the trial court's ruling, the Fourth Circuit held:

> In the present case, it is undisputed that Edwards was not alive at the time of the alleged negligence. We conclude that because he was not a natural person he was not a patient as defined by the MMA. Furthermore, La. R.S. 40:1299.41(A)(8), in defining malpractice for the act, provides for liability of a health care provider for negligent acts or omissions in rendering health care or professional services to a patient.
> …
> Applying a strict reading of the MMA in the present case, more particularly, the definitions of "patient" and "malpractice", we cannot say that the statute was intended to encompass negligent acts toward a deceased person.
> Therefore, we conclude that Memorial's alleged negligence, in handling Edwards' body after his death, is not a medical malpractice claim as contemplated by the MMA.

*Id*., at 736. In an unpublished opinion, *Harris v. St. Tammany Par. Hosp. Serv. Dist. No. 1,* 11-0941 (La. App. 1 Cir. 12/29/11), *writ denied*, 12-0585 (La. 4/20/12), 85 So.3d 1275, *and writ denied*, 12-0678 (La. 4/20/12), 85 So.3d 1277, the First Circuit applied *Gayden* to find that a hospital's handling of a body after death fell under general negligence principles. ("To the extent that plaintiff argues in its malpractice claim against STPH that STPH erred in failing to send Mrs. Harris' body for autopsy, we note that the Medical Malpractice Act was not intended to encompass negligent acts toward a deceased person because a corpse is not considered a "patient" under the MMA.")

Based on the foregoing, we agree with the relators that a stillborn child cannot, for the purpose of invoking LMMA review, be considered a "patient," as defined above. Next, we must consider whether the handling of a Nalini's remains could be considered as an extension of "health care" provided to Ms. Fields.

*Coleman factors*

In *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So.2d 303, 315-316, the Louisiana Supreme Court identified the following factors to be considered when

determining whether the conduct of a qualified health care provider constitutes "malpractice" as defined under the LMMA:

> [1] whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill,
> [2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
> [3] whether the pertinent act or omission involved assessment of the patient's condition.
> [4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
> [5] whether the injury would have occurred if the patient had not sought treatment, and
> [6] whether the tort alleged was intentional.

## *Health care*

While clearly an act of malpractice can occur in the rendition of professional services, the patient must still be in the process of receiving "health care" from the doctor or hospital when the negligent rendition of professional services occurs. This means that the act or omission must have occurred "during the patient's medical care, treatment or confinement." *Price v. City of Bossier City*, 96-2408 (La. 5/20/97), 693 So. 2d 1169, 1172-73; *Richard v. Louisiana Extended Care Centers, Inc.*, 02-0978 (La. 1/14/03), 835 So.2d 460, 468. As noted above, "health care" means any "act" or "treatment performed." In the instant case, the petition does not allege that Ms. Fields was receiving any type of ongoing care or treatment from Ochsner at the time that the alleged negligence took place. The petition does allege, however, that the act of negligence occurred after she was discharged from the hospital. Accordingly, we fail to find, based on the petition, that that the act of negligence was in the context of "health care" as defined by the LMMA.

## *Expert medical evidence*

The relators argue that the second *Coleman* factor is inapplicable based on the allegations raised in the Petition for Damages because expert medical evidence is not required to determine whether losing a body under the hospital's custody and control falls below an appropriate standard of care. Conversely, Ochsner contends that the procedures and processes in this case "are driven by medical standards and legal requirements and involve multiple levels of medical and professional staff, including physicians, nurses, religious, security and other hospital professional staff." Ochsner concludes, "the requirements of the handling of human remains and post mortem care is not within the purview of a lay person, and thus, this factor weighs in favor of applying the MMA to this action."

In *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, *supra* at 527, the family members of a deceased patient sued the hospital where the patient received treatment, alleging that the patient's death was caused by the hospital's complete inability to transfer a patient because of a lack of emergency power, poor building design, and inadequate protection from floodwaters. In that case, the supreme court held, based on the petition, that because the plaintiffs had not alleged that the patient's death had been caused by individuals with medical training, medical evidence was not necessary to evaluate certain aspects of the claim.

4

In the instant case, the petition alleges that the act of negligence was the hospital's misplacement of Nalini's remains. Here, like the reasoning of the *LaCoste* court, we find that no medical expert will be needed to determine whether hospital personnel were negligent in doing so. Expert testimony is not required where a layperson can infer negligence from the facts. *Pfiffner v. Correa*, 94-0924, 94-0963, 94-0992 (La. 10/17/94), 643 So.2d 1228, 1230; *Gisclair v. Bonneval, M.D.*, 04-2474 (La. App. 1 Cir.12/22/05), 928 So.2d 39, 42. We find this factor weighs in favor of finding the allegations sound in general negligence.

### Assessment of condition

Under this factor, Ochsner argues that "the care and treatment provided to Diamond Fields during delivery of Naomi [sic], and the determination of stillborn delivery and after life-care requirements involve the assessment of both mother and the stillborn child during delivery, and after life-care of the stillborn child." As stated above, we do not find that Nalini was the patient for the purposes of the LMMA. Ochsner fails to identify what, if any, "assessments" of Nalini's remains were required in the weeks after Ms. Fields was discharged from the hospital, which is when the alleged acts of negligence occurred.

### Patient relationship

The petition, on its face, does not allege that an act of negligence occurred in the context of a physician-patient relationship. While relators acknowledge the obvious relationship between Ms. Fields and Ochsner in the delivery of Nalini, they claim that the emotional damages sustained were removed from any treatment or physician-patient relationship. Additionally, it is not asserted that Nalini's father, Gerald Sanford, was ever a patient of Ochsner in connection with the alleged acts of negligence.

Relating to the second part of the fourth factor, Ochsner argues that safeguarding remains after death is an activity that it is licensed to perform. If so, then this fact must be weighed along with the other factors in our analysis. Nothing in the plain language of the LMMA limits its application to direct treatment by a physician. *Dupuy v. NMC Operating Co.*, *supra*. The use of the term "health care provider" rather than simply "physician" or "medical doctor" necessarily includes actions that are treatment-related and undertaken by a hospital in its capacity as a health care provider - even if a medical professional does not directly perform those actions. *Dupuy*, 187 So.3d at 443.

### Would injury have occurred

Here, Ms. Fields was admitted to Ochsner for the delivery of her stillborn child. If she had not sought treatment there, Ochsner would not have been responsible for Nalini's remains. Therefore, the fifth *Coleman* factor is satisfied.

### Intentional tort

The LMMA does not protect the provider from all acts of misconduct between the provider and his patients. It is only triggered by the negligent care and treatment of the patient. Were the provider to commit an intentional tort against

5

his patient or negligently injure his patient in a manner unrelated to medical treatment, the limitation of liability would not be available. *Descant v. Adm'rs of Tulane Educ. Fund*, 93-3098 (La.7/5/94), 639 So.2d 246, 250. A review of the relators' petition shows that they advanced theories of recovery under both negligence and intentional tort. To the extent that the trial court did not dismiss the intentional tort claims, the sixth factor in *Coleman* is inapplicable.

In derogation of the general rights of Louisiana tort victims, the LMMA grants qualified health care providers certain limitations on liability for unintentional torts that constitute medical malpractice as defined in the Act. *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-0451 (La. 12/1/04), 888 So. 2d 782, 791. Here, because we find that the alleged act does not constitute "malpractice," a finding of intent as to the general negligence claims is not necessary to our analysis.

## Conclusion

After a *de novo* review of the petition and Ochsner's exception, and applying all the *Coleman* factors, we find that the trial court erred in granting Ochsner's exception on the basis that the relators' claims must first be presented to a medical review panel. For the purpose of the LMMA, Nalini cannot be considered as a patient, nor did she ever meet the legal definition of a person. Under *Coleman*, and applying the relevant definitions, we fail to find that that the act(s) of negligence were in the context of "health care" as defined by the LMMA. Nor do we find that expert medical testimony is necessary to understand the allegations of general negligence which, in this case, consist of losing Nalini's remains. The relators claim that the emotional damages sustained were removed from any treatment or physician-patient relationship. Additionally, it is not asserted that Nalini's father, Mr. Sanford, was ever a patient at Ochsner related to Nalini's delivery. Finally, certain acts alleged in the petition are classified as intentional torts which fall outside of the LMMA.

Accordingly, for the foregoing reasons, the relators' writ is granted and the judgment of the trial court granting the exception of prematurity is reversed.

Gretna, Louisiana, this 20th day of August, 2021.

**JJM**
**SJW**
**HJL**

6

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN
TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS
DAY **08/20/2021** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF
THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY
COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**21-C-481**

### E-NOTIFIED

24th Judicial District Court (Clerk)
Honorable June B. Darensburg (DISTRICT JUDGE)
David L. Bateman (Relator)
Nadia M. de la Houssaye (Respondent)

### MAILED

J. Michael McDonald (Relator)
Attorney at Law
6700 Jefferson Highway
Building 3
Baton Rouge, LA 70806