# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# NO. 2023 CA 0526

## VALERIE DREUIL ALDRIDGE

### VERSUS

## GREENBRIER HOSPITAL, L.L.C., OFFICE OF THE ST. TAMMANY PARISH CORONER, CHARLES PRESTON, M.D., IN HIS CAPACITY AS THE ST. TAMMANY PARISH CORONER, KELA BICKHAM D.N.P., JOSE RODRIGUEZ, M.D., AND BALMINDER S. MANGAT, M.D.

Judgment Rendered: __MAR 1 3 2024__

Appealed from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket No. 2017-13881
The Honorable Vincent J. Lobello, Judge Presiding

| | |
|---|---|
| Sara G. Ford<br>Marc D. Winsberg<br>Robin Penzato Arnold<br>New Orleans, Louisiana | Counsel for Plaintiff/Appellant,<br>Valerie Dreuil Aldridge |
| Raymond R. Egan III<br>Metairie, Louisiana | Counsel for Defendants/Appellees,<br>Kela Bickham, D.N.P., Jose<br>Rodriguez, M.D., Balminder S.<br>Mangat, M.D., in his individual<br>capacity |
| Carl E. Hellmers III<br>Joshua J. Spencer<br>Max L. Schellenberg<br>D. Burke Stough<br>Stephanie D. O'Brien<br>New Orleans, Louisiana | Counsel for Defendants/Appellees,<br>St. Tammany Parish Coroner's<br>Office through its Coroner, Dr.<br>Charles Preston, individually and<br>in his capacity as Coroner of St.<br>Tammany Parish, and Dr.<br>Balminder Mangat |
| Bryan D. Scofield<br>James T. Rivera<br>Jessica L. Wimberley<br>Lafayette, Louisiana | Counsel for Defendant/Appellee,<br>Greenbrier Hospital, L.L.C. |

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

**MILLER, J.**

This matter is before us on appeal by plaintiff, Valerie Dreuil Aldridge, from a judgment of the trial court granting defendants' motions for summary judgment and dismissing her claims against defendants with prejudice. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Ms. Aldridge instituted this suit for damages against Greenbrier Hospital, L.L.C.,[1] the Office of the St. Tammany Parish Coroner,[2] Dr. Charles Preston, in his capacity as the St. Tammany Parish Coroner, Deputy Coroner Dr. Balminder S. Mangat, Lakeview Regional Medical Center, Dr. Kevin G. Erwin, Dr. Jose Rodriguez, and Doctor of Nurse Practitioner Kela Bickham, alleging that she was improperly involuntarily committed to Greenbrier as the result of an Order of Protective Custody ("OPC") issued by the St. Tammany Parish Coroner's Office at the request of her estranged husband, James Aldridge.[3] Ms. Aldridge contended that in requesting protective custody, Mr. Aldridge alleged that Ms. Aldridge had ingested 45 Loratabs or Oxycodone within the span of a week; that she was paranoid, stating that her husband was going to harm her; and that she was

---

[1]Greenbrier Hospital, L.L.C., is also referred to as "Greenbrier Behavioral Hospital" in the record. We will refer to same as "Greenbrier" herein.

[2]The trial court determined that "the Coroner's Office" lacked the procedural capacity to be sued and dismissed, with prejudice, all claims against the Office of the Coroner of St. Tammany Parish pursuant to a peremptory exception raising the objection of no cause of action.

[3]The matter convened before a Medical Review Panel, which issued an "Opinion and Reasons" on October 22, 2019. As to the qualified healthcare provider defendants, the panel unanimously determined that the evidence did not support a conclusion that Lakeview Regional Medical Center failed to meet the applicable standard of care; the panel unanimously determined that DNP Bickham failed to comply with the appropriate standard of care and the conduct complained of was a factor of the resultant damages; the evidence did not support the conclusion that Dr. Mangat failed to meet the applicable standard of care; there was a material issue of fact, not requiring expert opinion, as to the liability of Dr. Rodriguez; and the panel was divided as to whether Dr. Erwin met the applicable standard of care.

Following the panel's opinion, Ms. Aldridge filed a third and supplemental petition naming Lakeview Regional Medical Center, Dr. Erwin, Dr. Rodriguez, DNP Bickham, and Dr. Mangat as defendants in the suit. Ms. Aldridge subsequently filed a motion to dismiss her claims against Lakeview Regional Medical Center without prejudice, which was granted by the trial court.

2

anxious, stressed, and experiencing crying spells and extreme anger. Ms. Aldridge alleged that the OPC indicated that Mr. Aldridge believed her to be a danger to herself and others and reported the basis for this belief as substance abuse of Loratab and Oxycodone, paranoid, rapid mood swings, extreme anger outbursts and anxiety.

On May 5, 2016, the OPC was executed by a St. Tammany Parish Sheriff's Deputy who Ms. Aldridge contends involuntarily removed her from her family home and transported her to Lakeview Regional Medical Center ("LRMC") for evaluation. Ms. Aldridge alleged that upon arrival to LRMC she underwent a comprehensive drug screen, which resulted in negative findings for opioids, illicit drugs, and illegal and/or non-prescribed medications. She was further evaluated by Dr. Kevin G. Erwin, whose report indicated that she was not suicidal or hallucinating and contained no indication that she was a danger to others. Ms. Aldridge alleged that Dr. Erwin's report indicated that he contacted her general physician, Dr. Geraldine Payne, who informed Dr. Erwin that Ms. Aldridge was in a violent relationship and had been in danger of being hurt by her husband in the past. However, she alleged that Dr. Erwin insisted that she be placed under a physician's emergency commitment ("PEC") primarily due to the "volatile environment" described by Dr. Payne.

Ms. Aldridge contends that on May 6, 2016, she was admitted to Greenbrier and remained there until May 9, 2016, despite the fact that at no time did she test positive for any illegal or nonprescribed medications, nor did any physician make any substantiated findings that she was a danger to herself or others. Ms. Aldridge alleged that upon her arrival at Greenbrier she was evaluated and admitted with the assistance of Greenbrier staff. She alleged that Greenbrier's "Face Sheet" on her chart indicated an admitting diagnosis of bipolar disorder, but said diagnosis was not attributed to or signed by any physician. Ms. Aldridge alleged that she had

3

never received a diagnosis of bipolar disorder in her entire medical history and that regardless of this false diagnosis, she was not administered any course of treatment or medication for this mental illness while at Greenbrier. DNP Bickham conducted a psychiatric evaluation of Ms. Aldridge on May 6, 2016. Ms. Aldridge alleged that DNP Bickham's report indicated that she was cooperative and displayed no signs of suicidal or homicidal ideation and diagnosed her with acute stress disorder and generalized anxiety disorder. According to Ms. Aldridge, DNP Bickham's report failed to mention any of the allegations in the OPC, which would cause her to be a danger to herself or others, nor does she mention the admitting diagnosis of bipolar disorder. Ms. Aldridge contended that, despite the lack of medical findings necessary to meet the criteria for continued hospitalization, Dr. Rodriguez, DNP Bickham, and the Greenbrier staff caused her to remain at Greenbrier for three more days "under a false diagnosis spawn[ed] from a fraudulent OPC."[4]

Ms. Aldridge further alleged that she was examined on May 7, 2016, by Deputy Coroner, Dr. Mangat. Ms. Aldridge alleged that Dr. Mangat completed a Coroner's Emergency Certificate ("CEC") after spending "no more than five minutes in [her] presence" before "rubber-stamping her prolonged involuntary commitment." She contended Dr. Mangat failed to address the medical records that indicated she had tested negative for any illegal or non-prescribed medications and that she was not suicidal, causing her to remain at Greenbrier for two more days. She further contended that the Coroner and his office wrongfully issued the CEC based on an unsupported allegation and that Dr. Mangat was negligent in failing to determine her legal status during his assessment where Ms. Aldridge had twice executed voluntary admissions, which she contends would have barred

---

[4]In her third supplemental and amending petition, Ms. Aldridge conceded that she signed voluntary admission forms at LRMC and Greenbrier. However, in her brief on appeal, she maintains that "at no time did she knowingly or willingly take any actions that she believes constituted a voluntary admission to Greenbrier."

4

involuntary admission. On May 9, 2016, Ms. Aldridge was seen by Dr. Rodriguez, who ultimately discharged her that afternoon.

Ms. Aldridge contended that her involuntary commitment was based on a false diagnosis of bipolar disorder, which was unrelated to any of Dr. Erwin's findings or the OPC's allegations of extreme substance abuse and being a danger to herself and others. She further alleged that the gross misconduct of Greenbrier, its employees, and the Coroner medical providers who admitted her under this false diagnosis, wholly disregarding the negative results of the comprehensive drug screen taken at LRMC, caused her to remain there over three days resulting in irreparable injury.

At the time of her commitment, Ms. Aldridge, who is a licensed registered nurse, owned and operated a furniture and interior design business. She alleged that as a result of her improper commitment and confinement, she lost significant time from the operation of her business, her nursing license renewal was placed at risk, and her children were placed at risk while in the care of her "estranged and abusive" husband. Ms. Aldridge thus sought damages for mental suffering, medical expenses, lost wages and/or income, and all other damages allowed by law.

Dr. Erwin filed a motion for summary judgment contending that Ms. Aldridge could not meet her evidentiary burden under Louisiana's Behavioral Health Law, codified as La. R.S. 28.1, *et seq.*, of establishing that Dr. Erwin breached the emergency standard of care and acted with willful or wanton negligence or gross misconduct, which proximately caused her injuries. The trial court granted the motion for summary judgment and dismissed Ms. Aldridge's claims against Dr. Erwin with prejudice. Motions for summary judgment were subsequently filed by the remaining defendants.

On July 28, 2022, Greenbrier filed a motion for summary judgment contending that Ms. Aldridge's claims against it should be dismissed because Ms. Aldridge failed to establish that Greenbrier breached the applicable standards of care and was grossly negligent, and that Greenbrier is not vicariously liable for any alleged acts or omissions of DNP Bickham or Dr. Rodriguez. In support of its motion, Greenbrier attached: (1) Ms. Aldridge's supplemental discovery responses to Greenbrier; (2) Ms. Aldridge's supplemental responses to Greenbrier's requests for admission, along with the PEC, CEC, Mr. Aldridge's Request for Protective Custody, and OPC; (3) deposition excerpts of Ms. Aldridge; (4) deposition excerpts of Dr. Erwin; (5) the affidavit of Greenbrier Chief Financial Officer, Janice Adams; and (6) the Associate Director Agreement between Greenbrier and Dr. Rodriguez.

On August 1, 2022, defendants Dr. Preston, individually, and in his capacity as the St. Tammany Parish Coroner, Dr. Mangat, DNP Bickham, and Dr. Rodriguez filed a motion for summary judgment contending that Ms. Aldridge was unable to meet her burden at trial under La. R.S. 9:2794, La. R.S. 13:5713(L),[5] and La. R.S. 28.1, *et seq.*, which require that she establish that the defendants demonstrated willful or wanton negligence or gross misconduct necessary to prevail on liability and to further overcome the express immunity provisions applicable to the Coroner and his employees. In support of their motion, the defendants attached: (A) Mr. Aldridge's Request for Protective Custody; (B) LRMC's PEC; (C) deposition excerpts of Dr. Erwin; (D) the PEC; (E) Greenbrier's Initial Intake Assessment & Inquiry Information Form; (F) the CEC; (G) Ms. Aldridge's Request for Medical Review Panel; (H) the Medical Review Panel Opinion and Reasons; (I) discovery propounded to Ms. Aldridge by defendants; (J) deposition excerpts of Ms. Aldridge; (K) the affidavit of DNP Bickham; (L) a

---

[5]Louisiana Revised Statute 13:5713 was amended by La. Acts 2018, No. 621, §1, which reenacted Section (L), pertaining to the Coroner's immunity from liability, as Section (I).

Formal Voluntary Admission Form; and (M) Ms. Aldridge's supplemental discovery responses to Greenbrier.

Ms. Aldridge filed an opposition addressing both motions. Therein, Ms. Aldridge relied on the affidavit of Dr. Sanjay Adhia, an expert in the field of psychiatry with substantial experience in the field of inpatient psychiatric hospital settings, who opined that the defendants deviated from the standards of care set forth in La. R.S. 28:53, La. R.S. 28:53.2, and La. R.S. 28:63, as applicable to each defendant. Ms. Aldridge contends that Dr. Adhia identified several breaches by each of the defendants that constitute willful or wanton negligence or gross misconduct, which create material issues of fact sufficient to preclude the grant of summary judgment. In support of her opposition, Ms. Aldridge attached: (1) excerpts of her deposition; (2) her records from Greenbrier; (3) the curriculum vitae of Dr. Adhia; (4) the affidavit of Dr. Adhia; (5) the affidavit of her brother-in-law, Frederick Tufts; (6) and deposition excerpts of Dr. Erwin.

Greenbrier filed a "rebuttal" memorandum objecting to the affidavits of Dr. Adhia and Mr. Tufts.[6] Defendants Dr. Mangat, in his individual capacity, DNP

---

[6]At the time the motions for summary judgment were submitted and heard, La. C.C.P. art. 966(D)(2) provided that:

> The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider.

Article 966 Section (D)(2) was subsequently amended and reenacted by La. Acts 2023, No. 368, §1, effective August 1, 2023, to provide a procedure for reference to documents previously filed into the record. See Taylor-Haynes v. Tropicana Entertainment LLC, 2023-0558 (La. App. 1st Cir. 11/15/23), __ So. 3d __, __, 2023 WL 7557872, *3, n.3. While the comments to the article indicate that the amendments to Subparagraph (D)(2) include only slight changes in phraseology, this court has determined that the amendments are substantive and cannot be applied retroactively. See La. C.C.P. art. 966, Comments – 2023, Comment (f); Ricketson v. McKenzie, 2023-0314 (La. App. 1st Cir. 10/4/23), __ So. 3d __, __, 2023 WL 7037495, *4. Accordingly, in the instant matter, we apply the version of La. C.C.P. art. 966 in effect at the time the motions for summary judgment were submitted and heard.

Bickham, and Dr. Rodriguez likewise filed a combined reply memorandum and motion to strike the affidavits of Dr. Adhia and Mr. Tufts.[7]

The motions for summary judgment were set for hearing on November 17, 2022. After hearing the defendants' objections, the trial court determined that the affidavit of Dr. Adhia contained merely conclusory statements not supported by any facts or data and further not supported by an application of any standards to those facts and data. The trial court further determined that the affidavit of Mr. Tufts was based on hearsay and not based on personal knowledge. The court thus struck the affidavits finding them not appropriate summary judgment evidence. The trial court subsequently concluded there were no issues of material fact and granted the motions for summary judgment.

The trial court signed a judgment on December 5, 2022, sustaining the defendants' objections and striking the affidavits of Dr. Adhia and Mr. Tufts, granting the motions for summary judgment, and dismissing Ms. Aldridge's claims against the remaining defendants with prejudice. Ms. Aldridge now appeals, contending that the trial court erred in: (1) granting defendants' motions for summary judgment; and (2) sustaining the defendants' objections and striking the affidavits of Dr. Adhia and Mr. Tufts.

## DISCUSSION

### Summary Judgment[8]

---

[7]The amendments to La. C.C.P. art. 966(D)(2) by La. Acts 2015, No. 422, §1, effective January 1, 2016, specifically removed the motion to strike as a means of raising an objection to a document offered by an adverse party in support of or in opposition to a motion for summary judgment. See La. C.C.P. art. 966, Comments – 2015, Comment (k). Thus, although defendants reply memorandum captions their objection to the affidavits as a "motion to strike," the only proper procedure to challenge the qualifications of an expert who has prepared an affidavit in opposition to a motion for summary judgment is pursuant to La. C.C.P. art. 1425, which provides guidelines and a procedure for determining the admissibility of expert opinion. See Adolph v. Lighthouse Property Insurance Corporation, 2016-1275 (La. App. 1st Cir. 9/8/17), 227 So. 3d 316, 320. Nevertheless, the characterization of a pleading by the litigant is not controlling and courts have a duty to look through a pleading's caption to ascertain its substance and do substantial justice to the parties. Carpenter v. Thomas, 2022-0872 (La. App. 1st Cir. 3/13/23), 362 So. 3d 977, 981. Thus, we will look to the substance of their motion and consider the objections raised in their reply memorandum as to whether the affidavits should be admitted or considered as proper summary judgment evidence. See Adolph, 227 So. 3d at 321; Carpenter, 362 So. 3d at 981.

8

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Murphy v. Savannah, 2018-0991 (La. 5/8/19), 282 So. 3d 1034, 1038. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). However, the court shall consider any documents filed in support of or in opposition to the motion for summary judgment to which no objection is made. See La. C.C.P. art. 966(D)(2).

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1).

Appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Leet v. Hospital Service District No. 1 of East Baton Rouge Parish, 2018-1148 (La. App. 1ˢᵗ Cir. 2/28/19), 274 So. 3d 583, 587. In ruling on a motion

---

[8]As previously noted, La. C.C.P. art. 966 was amended and reenacted by La. Acts 2023, No. 317, §1 and La. Acts 2023, No. 368, §1, effective August 1, 2023. However, for purposes of our review herein, we apply the pre-amendment version of La. C.C.P. art. 966 in effect at the time the motions for summary judgment were submitted and heard.

for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. Collins v. Franciscan Missionaries of Our Lady Health System, Inc., 2019-0577 (La. App. 1st Cir. 2/21/20), 298 So. 3d 191, 194, writ denied, 2020-00480 (La. 6/22/20), 297 So. 3d 773. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can only be seen in light of the substantive law applicable to the case. Chapman v. Haynes, 2022-0288 (La. App. 1st Cir. 9/16/22), 352 So. 3d 1023, 1027.

## Medical Malpractice

To establish a claim for medical malpractice, a plaintiff must prove the following by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794(A); Schultz v. Guoth, 2010-0343 (La. 1/19/11), 57 So. 3d 1002, 1006.

In motions for summary judgment in the context of medical malpractice, the burden of proof does not require that the medical care provider disprove medical malpractice, but only that the medical care provider raise as the basis of its motion that the plaintiff cannot support his burden of proof at trial to demonstrate medical malpractice. See Samaha v. Rau, 2007-1726 (La. 2/26/08), 977 So. 2d 880, 887; see also Boudreaux v. Mid-Continent Casualty Company, 2005-2453 (La. App. 1st Cir. 11/3/06), 950 So. 2d 839, 843-844, writ denied, 2006-2775 (La. 1/26/07), 948 So. 2d 171. Once the medical care provider has made a *prima facie* showing that the motion should be granted, then the burden shifts to the plaintiff to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1); see also Samaha, 977 So. 2d at 887-888.

10

It is well established that to meet the burden of proof in a medical malpractice action, the plaintiff generally is required to produce expert medical testimony.[9] Methvian v. Our Lady of the Lake Hospital, 2022-0398 (La. App. 1st Cir. 11/4/22), 354 So. 3d 720, 724. The jurisprudence has held that this requirement of producing expert medical testimony is especially necessary when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence that the treatment met the applicable standard of care. Boudreaux, 950 So. 2d at 844.

The opinion of the medical review panel is admissible expert medical evidence that may be used to support or oppose any subsequent medical malpractice suit. See La. R.S. 40:1231.8(H); Methvian, 354 So. 3d at 724. In the context of a motion for summary judgment, such evidence may suffice to constitute a *prima facie* case that no issues of material fact exist. See In re Medical Review Complaint by Downing, 2021-0698 (La. App. 4th Cir. 5/26/22), 341 So. 3d 863, 870; Methvian, 354 So. 3d at 724. Once the medical care provider has made a *prima facie* showing that the motion should be granted, then the burden shifts to the plaintiff to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. Mariakis v. North Oaks Health System, 2018-0165 (La. App. 1st Cir. 9/21/18), 258 So. 3d 88, 94.

### Admissibility of Affidavits
### (Assignment of Error Number Two)

Ms. Aldridge contends on appeal that the trial court erred in sustaining defendants' objections and finding that the affidavits of Dr. Adhia and Mr. Tufts

---

[9]Notably, the jurisprudence recognizes limited exceptions to the requirement of expert testimony in those instances where the claim arises out of an "obviously careless act" from which a lay person can infer negligence. Pfiffner v. Correa, 94-0924 (La. 10/17/94), 643 So. 2d 1228, 1233-1234.

11

offered in opposition to defendants' motions for summary judgment were not competent summary judgment evidence.

When an objection to an affidavit in support of or in opposition to a motion for summary judgment is made in accordance with La. C.C.P. art. 966(D)(2), the only issue to be determined is whether that affidavit complies with La. C.C.P. art. 967. Mariakis, 258 So. 3d at 95. Louisiana Code of Civil Procedure article 967(A) requires that affidavits offered in support or in opposition to a motion for summary judgment be made on personal knowledge and show affirmatively that the affiant is competent to testify to the matters stated therein.

Personal knowledge encompasses only those facts that the affiant saw, heard, or perceived with his own senses. Schexnaildre v. State Farm Mutual Automobile Insurance Co., 2015-0272 (La. App. 1st Cir. 11/9/15), 184 So. 3d 108, 116. Portions of affidavits not based on the personal knowledge of the affiant should not be considered by the trial court in deciding a motion for summary judgment. Griffin v. Design/Build Associates, Inc., 2018-1720 (La. App. 1st Cir. 5/31/19), 278 So. 3d 399, 404.

The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under La. C.E. art. 702 and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). Louisiana Code of Evidence article 702(A) permits an expert to testify in the form of an opinion if (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. See Thompson v. Center for Pediatric & Adolescent Medicine, L.L.C., 2017-1088 (La. App. 1st Cir. 3/15/18), 244 So. 3d 441, 446, writ

12

denied, 2018-0583 (La. 6/1/18), 243 So. 3d 1062. In a motion for summary judgment, the reasoning or methodology underlying an expert's opinion are relevant only to determine whether the opinions are *admissible* under La. C.C.P. art. 967(A) and La. C.E. art. 702. Thompson, 244 So. 3d at 447, citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-593, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993); Freeman v. Fon's Pest Management, Inc., 2017-1846 (La. 2/9/18), 235 So. 3d 1087, 1089-1090; Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181 (La. 2/29/00), 755 So. 2d 226, 235.

Affidavits that are devoid of specific underlying facts to support a conclusion of ultimate "fact" are legally insufficient to defeat summary judgment. Lewis v. Four Corners Volunteer Fire Department, 2008-0354 (La. App. 1st Cir. 9/26/08), 994 So. 2d 696, 700. Mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. Mariakis, 258 So. 3d at 96. The abuse of discretion standard applies to the trial court's ruling on an objection to a document filed in support of or in opposition to a motion for summary judgment that is raised by a party in a timely filed opposition or reply memorandum in accordance with La. C.C.P. art. 966(D)(2). Pottinger v. Price, 2019-0183 (La. App. 1st Cir. 10/23/19), 289 So. 3d 1047, 1053.

**Affidavit of Dr. Sanjay Adhia**

Ms. Aldridge contends that the trial court erred in striking the expert affidavit of Dr. Adhia. Ms. Aldridge argues that Dr. Adhia's affidavit met the requirements of La. C.C.P. art. 967 by identifying the medical records he reviewed, setting forth the applicable standard of care, and the facts supporting his expert opinion that defendants breached the standard of care, committing willful or wanton negligence or gross misconduct.

13

In his three-page affidavit, Dr. Adhia set forth his extensive qualifications as an expert in the field of psychiatry and inpatient psychiatry, which included his experience conducting evaluations of patients and managing staff as the attending psychiatrist at the University of Texas Harris County Psychiatric Center. Dr. Adhia attested to his familiarity with the American Psychiatric Association Practice Guidelines for the Psychiatric Evaluation of Adults as well as his numerous prior qualifications as an expert witness in this field. Prior to rendering an opinion herein, Dr. Adhia attested that he reviewed the medical records of Ms. Aldridge, identified as: VDA-1-72, Greenbrier 1-106, LRMC 1-102, VDA 73-109, and Mandeville Pharmacy 1-2. Dr. Adhia further attested that he reviewed the deposition of Ms. Aldridge, the pleadings herein, including the original petition, the first, second, and third supplemental and amending petitions, as well as the opinions and reasons of the medical review panel. Dr. Adhia stated that he reviewed La. R.S. 28:53 governing admission by emergency certificate, La. R.S. 28:63 providing the standard of care and for limitation of liability, and La. R.S. 28:53.2 governing orders for custody and civil liability resulting therefrom. Thereafter, Dr. Adhia opined that defendants committed gross negligence, specifically itemized how the standard of care was breached as to each defendant, and applied the relevant facts in support of his findings, as follows:

24. It is my opinion as an expert in the field of psychiatry and inpatient psychiatry that the following Defendants breached the 'willful or wanton negligence or gross misconduct' standard of care (summarized as "gross negligence" below) in the following, non-exhaustive ways:

a. Greenbrier acted with gross negligence in admitting Ms. Aldridge to its facility under the admitting diagnosis of bipolar disorder, as she had no medical history, prior diagnosis, or current diagnosis, of bipolar disorder. Additionally, the relevant medical records, in terms of subjective and objective elements, are not indicative of bipolar disorder. There were no FDA-approved medications for bipolar disorder (i.e., mood-stabilizer or antipsychotic medication) prescribed to Ms. Aldridge.

14

b. Greenbrier and Kela Bickham, NP, and Jose Rodriguez, MD acted with gross negligence in its treatment of Ms. Aldridge at its facility after admitting her under the admitting diagnosis of bipolar disorder, including but not limited to by administering Remeron to her, without clinical justification for same, given the risk that Remeron could trigger a manic episode in those with bipolar disorder.

c. Greenbrier and Kela Bickham, NP, and Jose Rodriguez, MD acted with gross negligence in failing to conduct an even minimally acceptable psychiatric evaluation of Ms. Aldridge upon her admission to Greenbrier, in light of the APA Practice Guidelines for the Psychiatric Evaluation of Adults.

d. Kela Bickham, NP and Jose Rodriguez, MD acted with gross negligence in indicating that Ms. Aldridge was either a danger to herself or others, such that continuation of her commitment at Greenbrier was appropriate, without any objective medical evidence of same.

e. Based on my review of the medical records and the deposition of Ms. Aldridge, I do not believe Ms. Aldridge met criteria for involuntary *or* voluntary admission to and/or continued hospitalization in an inpatient psychiatric hospital.

f. Balminder Mangat, MD, and by virtue of his employment and role as a deputy Coroner, Dr. Charles Preston in his capacity as the St. Tammany Parish Coroner, acted with gross negligence in failing to conduct an even minimally acceptable evaluation of Ms. Aldridge prior to executing the CEC.

g. Dr. Charles Preston in his capacity as St. Tammany Parish Coroner should not have relied exclusively upon the Request for Order of Protective Custody submitted by Mr. Aldridge in issuing the Order of Protective Custody, given Mr. Aldridge's extensive history of being a subject himself of Orders of Protective Custody.

On review, we find it an abuse of discretion to exclude Dr. Adhia's affidavit setting forth his expert opinions at this stage of the litigation. Although defendants argue Dr. Adhia's affidavit offers conclusory legal determinations and unsupported speculation with no evidentiary basis, we disagree. Dr. Adhia's affidavit clearly states that the opinions were rendered therein after reviewing the applicable law and applying the standards set forth in the American Psychiatric Association Practice Guidelines for the Psychiatric Evaluation of Adults. The affidavit further outlines the facts supporting his conclusions and details specific actions taken, or

15

omitted, by each defendant.[10] We find Dr. Adhia's expert affidavit sufficient and competent summary judgment evidence. We further find the exclusion of same at the summary judgment stage would improperly usurp the function of the factfinder at trial, which is to weigh the evidence and expert opinions in order to determine whether the plaintiff has met her burden of proving causation. See Carpenter v. Thomas, 2022-0872 (La. App. 1st Cir. 3/13/23), 362 So. 3d 977, 985. In so finding, we note, as our brethren did in Carpenter, that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." See Carpenter, 362 So. 3d at 985, citing Daubert, 509 U.S. at 596, 113 S.Ct. at 2798; see also Blair v. Coney, 2019-00795 (La. 4/3/20), 340 So. 3d 775, 781.

## Affidavit of Frederick Tufts

Ms. Aldridge contends that the affidavit by her brother-in-law, Mr. Tufts, is relevant because it "plainly describes a wealth of information made available to Dr. Preston" that clearly indicated the facts sworn to by Mr. Aldridge in requesting the

---

[10]Cf. Thompson, 244 So. 3d at 449. In this medical malpractice case, defendant argued the expert physician's affidavit, which was not objected to as summary judgment evidence, did not address all essential elements of plaintiff's burden of proof, did not identify the standard of care applicable to a nurse practitioner, and did not confirm that the expert physician was familiar with that standard of care. In finding the affidavit sufficient to defeat summary judgment, this court reasoned:

> While Dr. Chabon's affidavit does not specifically state the standard of care, he did attest that the medical care provided by the defendants to Jessica fell below the standard of care. Construing all reasonable inferences from this evidence in favor of the Thompsons, one can reasonably infer that Dr. Chabon is familiar with the applicable standard of care, and Gaudin breached that standard.
>
> If a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under *Daubert–Foret* and the other applicable evidentiary rules, and is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact more likely than not is true, the trial court should deny the motion. *Independent Fire Insurance Company*, 755 So.2d at 236. Dr. Chabon's affidavit was admitted into evidence. Having reviewed that affidavit, we find it sufficient to allow a reasonable juror to conclude that Gaudin breached the applicable standard of care, and that Jessica sustained damages therefrom. The evidence thus creates a genuine issue of material fact precluding summary judgment.

Thompson, 244 So. 3d at 449. (Footnote omitted.)

OPC were patently false. Ms. Aldridge contends that Mr. Tufts' affidavit describes his interactions with Dr. Preston, the Coroner, relative to her involuntary hospitalization. More specifically, Ms. Aldridge contends that Mr. Tufts conveyed information about her domestic situation, of which he had personal knowledge. Although Ms. Aldridge concedes that some of the information attested to was not personally witnessed by Mr. Tufts, such as her evaluation by the Deputy Coroner, Dr. Mangat, she maintains that Mr. Tufts clearly had personal knowledge of his own direct communications with Dr. Preston. Ms. Aldridge contends that the affidavit establishes that that the Coroner's office failed to intervene in her continued involuntary hospitalization despite being presented with facts that established that the involuntary hospitalization was unwarranted. She further contends that it is probative of the allegations that the Coroner acted with wanton or willful negligence or with gross misconduct, and thus it should have been admitted.

Defendants argue that the trial court properly struck the affidavit based on their objections that the statements in paragraphs two through six contained various facts that he "learned" from other sources, which were not based on Mr. Tufts' personal knowledge; that paragraphs seven through eleven contain inadmissible hearsay related to a narrative concerning a series of phone calls with the coroner's office and Dr. Preston; and that Mr. Tufts had no personal knowledge concerning Ms. Aldridge's motives and Dr. Mangat's examination of Ms. Aldridge necessary to support the statements made in paragraphs eight (d), (g), and (f). Defendants thus contend that the affidavit should be stricken in its entirety where it provides no information to suggest that Ms. Aldridge can establish gross negligence, the information set forth by Mr. Tufts is largely irrelevant, and that Mr. Tufts attempts to recount large sections of hearsay and information not based on personal knowledge.

A witness may not testify to matters over which he lacks personal knowledge; and an affiant is required to "show affirmatively that the affiant is competent to testify to the matters stated" in the affidavit. La. C.C.P. art. 967. We have thoroughly reviewed Mr. Tufts' affidavit. To the extent that the assertions in Mr. Tufts' affidavit were not reasonably based on his personal knowledge, in particular, paragraphs two through six, we find no abuse of the trial court's discretion in finding those portions of the affidavit inadmissible. See Melancon v. Perkins Rowe Associates, LLC, 2016-0219 (La. App. 1st Cir. 12/14/16), 208 So. 3d 925, 928-929. We further find no abuse in the trial court's discretion in finding paragraph eleven inadmissible as conclusory.

However, to the extent that Mr. Tufts' affidavit addresses the history of Mr. and Ms. Aldridge's relationship, of which he had personal knowledge as a family member, as well as his direct conversations with Dr. Preston, of which Mr. Tufts also had personal knowledge, we find the trial court abused its discretion in striking these portions of the affidavit. Whether the statements are accurate is not to be decided on a motion for summary judgment. The trial court must assume that all of the affiants are credible. Pacaccio v. Hoover, 2021-1587 (La. App. 1st Cir. 8/2/22), 348 So. 3d 81, 86, writ denied, 2022-01525 (La. 12/6/22), 351 So. 3d 367. As to the relevancy of these statements in Mr. Tufts' affidavit, these portions of the affidavit focus on Mr. Aldridge's motive for requesting the protective order and information that was provided to the coroner, which is at the center of the litigation.[11] See La. C.E. art. 401; Pacaccio, 348 So. 3d at 86, citing West v. Hornsby, 2020-0871 (La. App. 1st Cir. 2/25/21), 2021 WL 734027, *4 (unpublished).

---

[11]Mr. Tufts attested that he called Dr. Preston on May 8, 2016, to relay this information. Dr. Preston advised he would "look into" the matter, and that Ms. Aldridge was released on May 9, 2016, the next day.

Considering our determination that the trial court abused its discretion in excluding the expert affidavit of Dr. Adhia, as well as portions of Mr. Tufts' affidavit, and considering same on our *de novo* review, we find Ms. Aldridge met her burden of producing factual support sufficient to establish the existence of a genuine issue of material fact or that the movers are not entitled to judgment as a matter of law.

## CONCLUSION

Based on the above and foregoing reasons, the portion of the December 5, 2022 judgment of the trial court sustaining defendants' objections and striking the affidavit of Dr. Adhia is reversed. The portion of the judgment sustaining defendants' objections and striking the affidavit of Mr. Tufts is affirmed in part and reversed in part. The portion of the judgment granting defendants' motions for summary judgment and dismissing all claims against Dr. Charles Preston, in his capacity as the St. Tammany Parish Coroner, Dr. Balminder S. Mangat, in his capacity as Deputy Coroner and in his individual capacity, Greenbrier Hospital, L.L.C., Dr. Jose Rodriguez, and DNP Kela Bickham is reversed. This matter is remanded to the trial court for further proceedings.

Costs of this appeal in the amount of $3,523.00 are assessed in equal portions to defendants, Dr. Charles Preston, in his capacity as the St. Tammany Parish Coroner, Dr. Balminder S. Mangat, in his capacity as Deputy Coroner and in his individual capacity, Dr. Jose Rodriguez, DNP Kela Bickham, and Greenbrier Hospital, L.L.C.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**