STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2024 CA 0716

RAYMOND A. CRAWFORD AND ALICE CRAWFORD

VERSUS

WILLIAM KARL ORDOYNE, JR., M.D. AND LALLIE KEMP
REGIONAL MEDICAL CENTER, THROUGH THE STATE OF
LOUISIANA, LSU HEALTH CARE SERVICE DIVISION

Judgment Rendered: **MAR 2 0 2025**

* * * * *

On Appeal from the
21st Judicial District Court
Parish of Tangipahoa, State of Louisiana
Trial Court No. 2015-0001050

The Honorable Charlotte H. Foster, Judge Presiding

* * * * *

Joseph R. Ward, Jr.
Covington, Louisiana

Attorney for Plaintiffs-Appellants,
Raymond A. Crawford and Alice
Crawford

Liz Murrill
Attorney General
Bryan J. Knight
Mark E. Kaufman
Special Assistant Attorneys General
New Orleans, LA

Attorneys for Defendants-Appellees,
William Karl Ordoyne, Jr., M.D. and
Lallie Kemp Regional Medical Center,
through the State of Louisiana, LSU
Health Care Services Division

* * * * *

BEFORE: WOLFE, MILLER, AND GREENE, JJ.

**WOLFE, J.**

Plaintiffs/appellants, Raymond A. Crawford ("Mr. Crawford") and Alice Crawford (collectively, "plaintiffs"), appeal from a judgment of the trial court granting both a motion in limine and a motion for summary judgment in favor of defendants/appellees, William Karl Ordoyne, Jr., M.D. ("Dr. Ordoyne") and Lallie Kemp Regional Medical Center, through the State of Louisiana, LSU Health Care Services Division ("Lallie Kemp") (collectively, "defendants"), thereby dismissing plaintiffs' claims against defendants with prejudice. For the following reasons, we reverse.

## FACTS AND PROCEDURAL HISTORY

On June 13, 2012, Mr. Crawford underwent a laparoscopic left inguinal hernia repair performed by Dr. Ordoyne at Lallie Kemp. During the surgery, Dr. Ordoyne used mesh which he attempted to "tack" into the appropriate anatomical structures within Mr. Crawford's body. Immediately following the procedure, Mr. Crawford experienced "extreme and constant pain" in his left lower abdomen and scrotum, as well as rectal bleeding, but was assured by Dr. Ordoyne that this was expected and would resolve in time. After several months of continued pain, and following subsequent consultations with other physicians, Mr. Crawford returned to Dr. Ordoyne, who advised Mr. Crawford that the surgical tacks used in the June 13, 2012 procedure were recommended to him by Lallie Kemp and that he would not have otherwise used them. Dr. Ordoyne performed a second laparoscopic inguinal hernia repair on October 26, 2012, during which the (alleged inappropriately placed) tacks used in the June 13, 2012 surgery were replaced and a new mesh was cut and implanted. Subsequently, on December 23, 2013, Mr. Crawford underwent a third surgery, performed by a surgeon other than Dr. Ordoyne, during which the initial mesh implanted by Dr. Ordoyne was removed, as well as additional tacks from both surgeries. It was noted at the time that the mesh was attached to the abdominal wall

2

and that a "large ball of mesh with an associated area of inflammation" was found and removed.

As a result of the pain experienced by Mr. Crawford, plaintiffs timely requested that a medical review panel be convened to review their claims of negligence against Dr. Ordoyne in his failure to properly perform the June 13, 2012 surgery and negligence against Lallie Kemp by recommending the use of improper surgical tacks to Dr. Ordoyne. A medical review panel was selected, and an attorney chairperson was appointed, but the panel expired by operation of law on February 7, 2015, without the panel considering evidence or issuing an opinion. On April 13, 2015, plaintiffs filed the instant medical malpractice suit, alleging that Dr. Ordoyne breached the standard of care during the June 13, 2012 surgery by improperly tacking mesh to inappropriate anatomical structures.[1] Plaintiffs further alleged that Lallie Kemp, Dr. Ordoyne's employer at the time, failed to supervise Dr. Ordoyne and was vicariously liable for his negligence. Plaintiffs alleged that Mr. Crawford experienced significant pain immediately following the surgery and has undergone numerous surgeries, including the subsequent removal of one of his testicles, all of which have been unsuccessful in relieving his pain.[2]

In support of their claims, plaintiffs retained Dr. Everett J. Bonner, Jr. ("Dr. Bonner") as an expert. Dr. Bonner reviewed Mr. Crawford's medical records from

---

[1] The one-year suspension of the running of prescription concerning a qualified health care provider shall cease ninety days after the notification to all parties, by certified mail, from the attorney chairman or the board regarding the dissolution of the medical review panel. See La. R.S. 40:1231.8(B)(3).

[2] Plaintiffs also alleged that Dr. Ordoyne failed to obtain informed consent from Mr. Crawford prior to the June 13, 2012 surgery. However, plaintiffs' informed consent claims were dismissed without prejudice by this court when it granted a writ application filed by Dr. Ordoyne and Lallie Kemp and granted their exception of prematurity based on the fact that the informed consent claims were not submitted to the medical review panel. **Raymond A. Crawford and Alice Crawford vs. William Karl Ordoyne, Jr., M.D. and Lallie Kemp Regional Medical Center, through the State of Louisiana, LSU Health Care Service Division**, 2015-1947 (La. App. 1st Cir. 4/5/16) (unpublished writ action). Plaintiffs also asserted medical malpractice claims against Dr. Ordoyne in relation to the October 26, 2012 surgery he performed on Mr. Crawford. However, those claims were dismissed pursuant to an April 29, 2020 consent judgment that granted a motion for partial summary judgment filed by Dr. Ordoyne.

3

Lallie Kemp, St. Tammany Parish Hospital, and University Medical Center; reviewed the deposition of Dr. Ordoyne; and conducted an independent examination of Mr. Crawford. On July 28, 2022, Dr. Bonner issued a report and affidavit regarding his findings, stating, "[t]he surgery performed [on June 13, 2012] appears to have also fallen below the standard of care. Surgical tacks were placed too laterally causing injury to the nerves in this region. This is a direct cause of [Mr. Crawford's] chronic pain and subsequent surgeries to include the removal of his left testicle." Citing a lecture given by a physician at the University of Wisconsin, Dr. Bonner further opined that "Mr. Crawford's tacks were placed in the wrong anatomical location. This is supported by office notes, operative notes[,] and CT scan of the abdomen." Dr. Bonner concluded, "Mr. Crawford's chronic pain and disability are a direct result from his initial hernia repair performed by Dr. Ordoyne and multiple subsequent inguinal surgeries and orchiectomy. There is data to support not using tacks for the laparoscopic procedure especially laterally. The lateral tack is known to cause nerve injury/pain. It is my clinical opinion that this was the causation for his initial complaints of severe pain."

In opposition to Dr. Bonner, defendants retained Dr. Karl LeBlanc ("Dr. LeBlanc"), who, in an affidavit dated January 11, 2024, likewise stated he reviewed Mr. Crawford's medical records and imaging studies from Lallie Kemp, University Medical Center, St. Tammany Parish Hospital, as well as from Ochsner North Shore. Dr. LeBlanc opined that "the imaging studies, particularly the CT scans referenced above, clearly show that all tacks used by Dr. Ordoyne were placed in the correct anatomic location. More specifically, there are no tacks inferior to the inguinal ligament, no tacks inferior to the ileopubic tract, no tacks in the 'triangle of pain,' and no tacks that are placed too far 'laterally.'" Further, Dr. LeBlanc stated it was his opinion "that the imaging studies, particularly the CT scans referenced above, clearly show that the tacks placed by Dr. Ordoyne during Mr. Crawford's June 13,

4

2012 surgery were placed appropriately, in the correct anatomic location, and well within the standard of care."

Additionally, in opposition to Dr. Bonner, Dr. Ordoyne also signed an affidavit on January 10, 2024, stating he is board certified in general surgery, and that he performed "hundreds, likely over a thousand, inguinal hernia repair surgeries over the course of [his] career." After reviewing Mr. Crawford's medical records from Lallie Kemp, University Medical Center, Ochsner North Shore, and St. Tammany Parish Hospital, Dr. Ordoyne opined that the tacks he placed during Mr. Crawford's June 13, 2012 surgery were visible in CT scans performed at the above-mentioned medical providers and that they are in the correct anatomic location. Dr. Ordoyne concluded, "[t]he CT scans [...] clearly show that the tacks I placed during Mr. Crawford's June 13, 2012 surgery were placed within the standard of care and in the correct anatomic location."

Dr. Bonner was deposed on December 11, 2023, and was specifically asked about the tack placement by defendants' counsel. Dr. Bonner confirmed that metallic, surgical tacks would be visible on a CT scan but admitted that he did not review any of Mr. Crawford's actual radiology scans, only the reports. Nevertheless, after a review of Mr. Crawford's symptoms, the medical records presented to him, and an independent medical examination, Dr. Bonner ultimately testified that the cause of Mr. Crawford's pain and numerous follow-up procedures was due to a surgical tack being placed too far laterally within Mr. Crawford's body, and which was placed within the "triangle of pain."

5

On January 12, 2024, defendants filed a motion in limine pursuant to Louisiana Code of Civil Procedure article 1425(F)[3], seeking a prohibition on any testimony or opinions which may be provided by Dr. Bonner. Pertinent herein, defendants challenged Dr. Bonner's methodology, arguing:

> As to tack placement, Dr. Bonner's only substantive opinion is that a surgical tack used by Dr. Ordoyne in the June 13, 2012 surgery was placed too far laterally in the 'triangle of pain.' Dr. Bonner acknowledges that Mr. Crawford's CT scan and imaging studies would show whether there actually were tacks within the triangle of pain. However, Dr. Bonner has never looked at the imaging to see where the tacks are located.

Defendants continued, contending: "Dr. Bonner's supposition as to where Dr. Ordoyne placed surgical tacks, particularly in light of CT imaging that Dr. Bonner has never reviewed and unrefuted expert testimony confirming that the CT imaging does not show what Dr. Bonner assumes it would, is nothing short of conjecture and must be excluded." The same day, defendants contemporaneously filed a motion for summary judgment, adopting the arguments presented in their motion in limine, and claiming that if such motion is granted, "plaintiffs will not have the expert testimony necessary to meet their burden of proof."

Defendants' motion for summary judgment and motion in limine was heard on February 14, 2024. Concerning defendants' motion in limine regarding Dr. Bonner's affidavit, the trial court stated as follows:

> Okay. Look, I got – I've looked at this and I've thought about this and so I'm granting the *Daubert* [motion]. I mean, I don't – how in the world did Dr. Bonner – and he qualified his opinion saying, 'Well, if the CT shows this and this, and the CT shows this and this,' and he's never looked at the CT, I don't think his testimony is based on sufficient facts and data. So I'm granting the *Daubert* [motion], not talking about Dr. Bonner's qualifications at all, but there's critical information out

---

[3] Louisiana Code of Civil Procedure article 966(D)(3) provides that, "[i]f a timely objection is made to an expert's qualifications or methodologies in support of or in opposition to a motion for summary judgment, any motion in accordance with Article 1425(F) to determine whether the expert is qualified or the expert's methodologies are reliable shall be filed, heard, and decided prior to the hearing on the motion for summary judgment." Additionally, prior to La. Acts 2024, No. 371, §1, La. Code Civ. P. art. 1425(F)(1) provided, in pertinent part, that "[a]ny part may file a motion for a pretrial hearing to determine whether a witness qualifies as an expert or whether the methodologies employed by such witness are reliable under Article 702 through 705 of the Louisiana Code of Evidence."

there that's never been provided to him and he already qualified his opinion based on what the CT scans might show. So I'm granting the *Daubert* [motion].

Thereafter, the trial court also granted defendants' motion for summary judgment, stating: "[U]nfortunately, you now no longer have an expert opinion to offer in support of this. This is not a situation where a layperson can testify. You're going to have to have medical testimony." On February 21, 2024, the trial court signed a judgment granting defendants' motion to strike Dr. Bonner's testimony, and specifically prohibited plaintiffs from offering "the testimony of [Dr. Bonner] in any form in this matter." The judgment further granted defendants' motion for summary judgment, dismissing all of plaintiffs' claims against them with prejudice. Plaintiffs now appeal, assigning error to the trial court's exclusion of the affidavit of Dr. Bonner and the granting of summary judgment in favor of defendants despite the existence of genuine issues of material fact.

## DISCUSSION

### *Summary Judgment*

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. **Murphy v. Savannah**, 2018-0991 (La. 5/8/19), 282 So.3d 1034, 1038. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3); **Campbell v. Dolgencorp, LLC**, 2019-0036 (La. App. 1st Cir. 1/9/20), 294 So.3d 522, 526.

The burden of proof on a motion for summary judgment rests with the mover. La. Code Civ. P. art. 966(D)(1); **Lucas v. Maison Insurance Co.**, 2021-1401 (La. App. 1st Cir. 12/22/22), 358 So.3d 76, 84. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for

7

summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Instead, after meeting his initial burden of showing that there are no genuine issues of material fact, the mover may point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. Code Civ. P. art. 966(D)(1); **Lucas**, 358 So.3d at 84.

Appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Leet v. Hospital Service District No. 1 of East Baton Rouge Parish**, 2018-1148 (La. App. 1st Cir. 2/28/19), 274 So.3d 583, 587. In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. **Collins v. Franciscan Missionaries of Our Lady of the Lake Health System, Inc.**, 2019-0577 (La. App. 1st Cir. 2/21/20), 298 So.3d 191, 194, writ denied, 2020-00480 (La. 6/22/20), 297 So.3d 773. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Chapman v. Haynes**, 2022-0288 (La. App. 1st Cir. 9/16/22), 352 So.3d 1023, 1027.

*Medical Malpractice*

To establish a claim for medical malpractice, a plaintiff must prove the following by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. See La. R.S.

8

9:2794(A); **Schultz v. Guoth**, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006. In motions for summary judgment in the context of medical malpractice, the burden of proof does not require that the medical care provider disprove medical malpractice, but only that the medical care provider raise as the basis of its motion that the plaintiff cannot support his burden of proof at trial to demonstrate medical malpractice. See **Samaha v. Rau**, 2007-1726 (La. 2/26/08), 977 So.2d 880, 887-88; **Methvien v. Our Lady of the Lake Hospital**, 2022-0398 (La. App. 1st Cir. 11/4/22), 354 So.3d 720, 723-24. Once the medical care provider has made a *prima facie* showing that the motion should be granted, then the burden shifts to the plaintiff to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. Code Civ. P. art. 966(D)(1); **Samaha**, 977 So.2d at 887-88.

It is well established that to meet the burden of proof in a medical malpractice action, the plaintiff generally is required to produce expert medical testimony.[4] **Methvien**, 354 So.3d at 724. The jurisprudence has held that this requirement of producing expert medical testimony is especially necessary when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence that the treatment met the applicable standard of care. **Boudreaux v. Mid-Continent Casualty Company**, 2005-2453 (La. App. 1st Cir. 11/3/06), 950 So.2d 839, 844, writ denied, 2006-2775 (La. 1/26/07), 948 So.2d 171. In the context of a motion for summary judgment, such evidence may suffice to constitute a *prima facie* case that no issues of material fact exist. See **In re Medical Review Complaint by Downing**, 2021-0698 (La. App. 4th Cir. 5/26/22), 341 So.3d 863, 870; **Methvien**, 354 So.3d at 724.

---

[4] Notably, the jurisprudence recognizes limited exceptions to the requirement of expert testimony in those instances where the claim arises out of an "obviously careless act" from which a lay person can infer negligence. **Pfiffner v. Correa**, 94-0924 (La. 10/17/94), 643 So.2d 1228, 1233-34.

*Admissibility of the Affidavit of Dr. Everett Bonner*

On appeal, plaintiffs contend that the trial court erred in sustaining defendants' motion to limine, thus prohibiting Dr. Bonner from offering an expert opinion to support to plaintiffs' claims. Any challenge to the qualifications or methodology of the plaintiffs' expert should be filed in a pre-trial motion in accordance with La. Code Civ. P. art. 1425(F). Louisiana Code of Civil Procedure article 1425(F) sets out in detail the procedure which should be followed in order to challenge the qualifications of an expert or the methodology used by the expert in reaching his opinion. **Adolph v. Lighthouse Property Insurance Corporation**, 2016-1275 (La. App. 1st Cir. 9/8/17), 227 So.3d 316, 320; see also **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

The admissibility of expert testimony is governed by La. Code Evid. art. 702[5], which pertinently provided:

A. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine at fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

Article 702 creates a five-element test to determine the admissibility of expert testimony. The first element requires the expert witness to be qualified as an expert by knowledge, skill, experience, training, or education. Failure of the witness to qualify as an expert pursuant to the introductory paragraph of Article 702(A) or

---

[5] Prior to La. Acts 2024, No. 88, §1.

failure of the testimony to meet any of the indicia of reliability or relevancy set forth in Article 702(A)(1) through (A)(4) will render the testimony inadmissible. **Williams v. State Farm Mutual Automobile Insurance Company**, 2020-0787 (La. App. 1st Cir. 3/11/21), 322 So. 3d 795, 798, *citing*, **Blair v. Coney**, 2019-00795 (La. 4/3/20), 340 So.3d 775, 779.

It is well-established that the trial court is afforded wide discretion in determining whether expert testimony should be admitted and who should or should not be permitted to testify as an expert. The trial court performs the important gatekeeping role of ensuring that any and all scientific testimony or evidence admitted is not only relevant, but reliable. In reviewing the trial court's determination, this court must be cautious not to substitute its own factual finding just because it may have decided the matter differently. **Williams**, 322 So.3d at 798.

Although we note the deference afforded to the trial court, we nevertheless find the trial court abused its discretion in excluding the expert opinion offered by Dr. Bonner at this stage of the litigation. While defendants argue that Dr. Bonner's testimony should be disregarded and inadmissible due to his failure to personally review the actual CT radiology scans, we disagree. Dr. Bonner's affidavit clearly states that his opinions were formulated after reviewing the medical records presented to him, which include the CT reports at issue, Dr. Ordoyne's deposition, as well as a personal examination of Mr. Crawford. Further, Dr. Bonner testified in his deposition that he "was not provided any imaging, just reports." Moreover, there appears to be discrepancies on the dates of the CT scans reviewed by and attached to Dr. Ordoyne's and Dr. LeBlanc's affidavits, and a general lack of clear identification on the CT scans provided by defendants. Specifically, it is not clear which scans correspond to which of Mr. Crawford's three hernia repair surgeries. Thus, the evidentiary value of the scans themselves is questionable.

11

Defendants do not attack Dr. Bonner's qualifications, only his methodology on the sole issue of his failure to review Mr. Crawford's actual CT scans, and they will have the opportunity at trial to attack Dr. Bonner's opinions through "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.[]" **Blair**, 340 So.3d at 781. We further note that to exclude plaintiffs' expert at the summary judgment stage would improperly usurp the function of the factfinder at trial, which is to weigh the evidence and expert opinions in order to determine whether the plaintiffs have met their burden of proof. See **Carpenter v. Thomas**, 2022-0872 (La. App. 1st Cir. 3/13/23), 362 So.3d 977, 985. Accordingly, we find the trial court abused its discretion in granting the defendants' motion in limine and thereby excluding Dr. Bonner's testimony.

*Analysis after De Novo Review*

Considering our determination that the trial court abused its discretion in excluding the expert affidavit and testimony of Dr. Bonner, and considering Dr. Bonner's affidavit on our *de novo* review, we find that plaintiffs met their burden of producing factual support sufficient to establish the existence of a genuine issue of material fact. We further find that there are genuine issues of material fact as to whether Dr. Ordoyne's actions fell below the appropriate standard of care in placing surgical tacks within Mr. Crawford's body during the June 13, 2012 laparoscopic left inguinal hernia repair. The evidence submitted by plaintiffs in opposition to defendants' motion for summary judgment thus creates a genuine issue of material fact precluding summary judgment.

## CONCLUSION

For the above and foregoing reasons, we reverse the trial court's February 21, 2024 judgment, which granted William Karl Ordoyne, Jr., M.D. and Lallie Kemp Regional Medical Center, through the State of Louisiana, LSU Health Care Services Division's motion in limine and motion for summary judgment, and thereby

dismissed all of Raymond A. Crawford and Alice Crawford's claims against the defendants with prejudice. Costs of this appeal are assessed to William Karl Ordoyne, Jr., M.D. and Lallie Kemp Regional Medical Center, through the State of Louisiana, LSU Health Care Services Division.

**REVERSED.**